(No. 95590.—

PATRICK C. ARVIA, Appellee, v. LISA MADIGAN, At-
torney General, *et al.*, Appellants.

*Opinion filed April 15, 2004.*

522

Lisa Madigan, Attorney General, of Springfield (Gary S. Feinerman, Solicitor General, and Laura Wunder, Assistant Attorney General, of Chicago, of counsel), for appellants.

Terry Sullivan and Nancy J. Nicol, of Rolling Meadows, for appellee.

JUSTICE FITZGERALD delivered the opinion of the court:

At issue in this appeal is the constitutionality of section 11—501.8 of the Illinois Vehicle Code (625 ILCS 5/11—501.8 (West 2000)), commonly referred to as the "zero tolerance law." Generally, the zero tolerance law provides that any driver under the age of 21 who tests positive for the presence of alcohol or refuses testing upon a police officer's proper request is subject to summary suspension of his or her driving privileges. 625 ILCS 5/11—501.8(a), (d) (West 2000). The zero tolerance law also provides that a driver may contest such a suspension at an administrative hearing before the Secretary of State, whose decision is subject to judicial review pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)). 625 ILCS 5/11—501.8(e), (h) (West 2000).

The circuit court of Cook County held section 11—501.8 unconstitutional on its face, finding the administrative proceedings contemplated in the statute violate the equal protection and due process rights of drivers under the age of 21. The State appealed directly to this court. See 134 Ill. 2d R. 302(a). We reverse.

## BACKGROUND

On July 29, 2000, a Winnetka police officer issued a traffic citation to plaintiff Patrick Arvia for failing to obey a stop sign. The police officer also issued plaintiff a "Zero Tolerance Warning to Motorist Under 21," and requested plaintiff take a Breathalyzer test. The warning advised plaintiff, who was under the age of 21, that refusal to complete requested chemical tests would result in suspension of his license for a minimum of six months. The warning also advised plaintiff that if he submitted to the requested test and the test disclosed an alcohol concentration greater than 0.00,[1] his driving privileges would be suspended for a minimum of three months. Plaintiff refused to take the Breathalyzer test. The officer prepared a sworn report, certifying that plaintiff had refused the test, and submitted the report to the Secretary of State. The Secretary of State, in turn, notified plaintiff that his driving privileges would be suspended for six months, beginning September 13, 2000.

Plaintiff requested a hearing before the Secretary of State, seeking rescission of the suspension of his driving privileges. The hearing proceeded on September 18, 2000. Plaintiff offered various grounds for rescission: the officer had no reason to believe that he had violated the Illinois Vehicle Code; the officer lacked probable cause to believe that he had consumed any amount of alcohol; and the officer failed to advise him of the consequences prior to asking him to submit to a Breathalyzer test. Plaintiff also claimed that he had not, in fact, refused to take a Breathalyzer test, and that he had ingested a prescribed or recommended dosage of medicine that contained alcohol. After hearing testimony and considering the evidence, the hearing officer rejected plaintiff's

---

[1]"Alcohol concentration means either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." 625 ILCS 5/11—501.8(b)(v) (West 2000).

arguments and recommended denial of plaintiff's petition for rescission. The Secretary of State, in an order entered November 2, 2000, accepted the hearing officer's recommendation and upheld the suspension. The order stated that it was "subject to appeal within 35 days under the Administrative Review Law [735 ILCS 5/3—101 *et seq.* (West 2000)]."

Plaintiff did not seek review of the Secretary's final decision under the Administrative Review Law. Rather, on November 28, 2000, plaintiff filed a complaint for declaratory judgment, naming then Attorney General James Ryan and Secretary of State Jesse White as defendants.[2] Plaintiff sought a declaration that section 11—501.8 of the Illinois Vehicle Code—the zero tolerance law—violates the equal protection rights of drivers under the age of 21. In his complaint, plaintiff did not mention the administrative hearing which he had requested, and in which he had already participated, or the Secretary of State's final decision upholding the suspension of his driving privileges. Plaintiff did allege that on August 21, 2000, he had filed a "Petition to Rescind the Statutory Summary Suspension" in the circuit court, but that he had been unable to obtain a hearing on that petition; he then filed his complaint for declaratory judgment.

The State moved to dismiss plaintiff's declaratory judgment action, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)). The circuit court denied that motion. Thereafter, plaintiff moved for summary judgment (735 ILCS 5/2—1005 (West 2000)). Plaintiff posited that drivers 21 years of age or older who refuse to submit to a chemical test for alcohol and are subject to summary suspension of their driving privileges (625 ILCS 5/11—501.1 (West 2000)) are entitled to a judicial hearing to contest the suspension

---

[2]Attorney General Lisa Madigan has been substituted as a defendant by operation of law. 735 ILCS 5/2—1008(d) (West 2000).

(625 ILCS 5/2—118.1(b) (West 2000)), but that under the zero tolerance law, drivers under the age of 21 who refuse to submit to such a test and are subject to summary suspension of their driving privileges may only challenge the suspension at an administrative hearing before the Secretary of State (625 ILCS 5/11—501.8(e) (West 2000)). Plaintiff argued that no rational reason exists to deny him the right to appear before a "neutral judge" to challenge his license suspension, and that the statutory classification, based on age, was unreasonable and arbitrary, violating his right to the equal protection of the law as guaranteed by the United States and Illinois Constitutions (U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2). In response, the State argued that plaintiff misread the statutory scheme and that any difference in available forums is rationally related to the legislature's goal of preventing underage drinking and driving. The circuit court granted plaintiff's motion for summary judgment, holding section 11—501.8 of the Illinois Vehicle Code unconstitutional.

After the circuit court's ruling, attorneys for the State learned that plaintiff had already challenged his license suspension before the Secretary of State, resulting in a final administrative decision upholding the suspension. The State subsequently filed a motion to vacate the summary judgment order. The State argued that plaintiff should have filed a complaint for administrative review, and that plaintiff's declaratory judgment action was an improper collateral attack on the Secretary of State's adverse decision. The State further argued that principles of waiver and *res judicata* barred plaintiff's declaratory judgment action. The circuit court denied the motion to vacate. This appeal followed. See 134 Ill. 2d R. 302(a).

## ANALYSIS

The State first argues that plaintiff's constitutional claim was not properly before the circuit court based on

principles of waiver, exhaustion of administrative remedies, and *res judicata*. Because this argument presents only issues of law, our review proceeds *de novo*. See *In re A.H.*, 207 Ill. 2d 590, 593 (2003).

## I. Waiver

The State contends that plaintiff's failure to raise his constitutional challenge in the administrative hearing before the Secretary of State waived review of the matter on administrative review and, in the context of this case, in plaintiff's separate complaint for declaratory judgment.

As a general rule, issues or defenses not raised before the administrative agency are deemed waived and cannot be raised for the first time on administrative review. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278 (1998). This rule has been applied to constitutional issues, even though the administrative agency lacks the authority to decide such issues. *E.g.*, *Texaco-Cities*, 182 Ill. 2d at 278. Assuming, without deciding, that the same waiver rules apply where, as here, the litigant files a separate declaratory judgment action, rather than a complaint for administrative review, we find no waiver under the facts of this case.

We note first that the scope of a license suspension hearing before the Secretary of State is expressly circumscribed by statute. The zero tolerance law states:

"The scope of this hearing shall be limited to the issues of:

(1) whether the police officer had probable cause to believe that the person was driving or in actual physical control of a motor vehicle *** and the police officer had reason to believe that the person was in violation of any provision of the Illinois Vehicle Code or a similar provision of a local ordinance; and

(2) whether the person was issued a Uniform Traffic Ticket ***; and

(3) whether the police officer had probable cause to believe that the driver had consumed any amount of an alcoholic beverage ***; and

(4) whether the person, after being advised by the officer that the privilege to operate a motor vehicle would be suspended if the person refused to submit to and complete the test or tests, did refuse to submit to or complete the test or tests to determine the person's alcohol concentration; and

(5) whether the person, after being advised by the officer that the privileges to operate a motor vehicle would be suspended *** did submit to and complete the test or tests that determined an alcohol concentration of more than 0.00; and

(6) whether the test result of an alcohol concentration of more than 0.00 was based upon the person's consumption of alcohol in the performance of a religious service or ceremony; and

(7) whether the test result of an alcohol concentration of more than 0.00 was based upon the person's consumption of alcohol through ingestion of the prescribed or recommended dosage of medicine." 625 ILCS 5/11—501.8(e) (West 2000).

By so defining and restricting the scope of the hearing, the statute dissuades a party from raising other issues and defenses before the Secretary of State.

We note further that, although this court has applied the general waiver rule to bar a party from raising a constitutional issue on review where that party failed to raise it before the agency (*Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002); *Texaco-Cities*, 182 Ill. 2d at 278-79), this court has refrained from adopting a bright-line rule "requiring" a party to raise all constitutional issues before the agency. Rather, we have held that it is "advisable" to assert a constitutional challenge before the administrative tribunal. *Carpetland*, 201 Ill. 2d at 397; *Texaco-Cities*, 182 Ill. 2d at 278.

In addition, we find it significant that plaintiff mounted a *facial* challenge to the validity of the zero tolerance law. A principal reason underlying this court's preference that litigants assert a constitutional challenge

before the agency—notwithstanding the agency's inability to rule on the matter—is that it allows opposing parties a full opportunity to present evidence to refute the constitutional challenge. Such an evidentiary record is indispensable because administrative review is confined to the record created before the agency. *Carpetland*, 201 Ill. 2d at 397. A facial challenge to a statute, however, presents an entirely legal question that does not require fact-finding by the agency or application of the agency's particular expertise. See *County of Kane v. Carlson*, 116 Ill. 2d 186, 199 (1987); *Board of Education of Rich Township High School District No. 227 v. Brown*, 311 Ill. App. 3d 478, 488 (1999).

The express statutory language restricting the scope of a zero tolerance license suspension hearing, the absence of a decision from this court "requiring" a litigant to raise all constitutional issues before the administrative agency, and the nature of the constitutional challenge asserted here militate in favor of a finding that plaintiff did not waive his constitutional challenge. The State argues, however, that this case is similar to *Carpetland* and *Texaco-Cities*, where we held that the plaintiffs waived review of their constitutional claims by failing to raise them before the administrative agency. As discussed below, the present case is distinguishable and does not require the same outcome.

In *Carpetland*, the employer sought administrative review of an adverse ruling by the Director of Employment Security. On administrative review before the circuit court, the employer argued, for the first time, that the Director's actions violated his due process rights because the Director had a direct, proximate and pecuniary interest in the outcome of the proceeding. On review before this court, we held that the employer had waived review of the matter by not raising it before the administrative tribunal. *Carpetland*, 201 Ill. 2d at 397.

In the present case, although the circuit court found the statute unconstitutional on both due process and equal protection grounds, plaintiff did not allege a due process violation. Plaintiff confined his constitutional challenge to the equal protection clause. We recognize, however, that underlying plaintiff's equal protection argument is his contention that a hearing before the Secretary of State is necessarily biased because the official who suspended his license is the same official who will decide any challenge to the suspension. In this respect, plaintiff's claim in the present case is similar to the employer's claim in *Carpetland*. That is, both cases involve a potential conflict of interest which could render the administrator's actions constitutionally suspect. Despite this similarity, we do not find *Carpetland* controlling.

In *Carpetland*, we held the issue waived because the employer failed to raise the matter before the agency, depriving the Director of the opportunity to "build a record in response to the constitutional challenge." *Carpetland*, 201 Ill. 2d at 397. In the instant case, however, the State conceded before the circuit court that there were no unresolved factual issues germane to the court's determination of plaintiff's constitutional claim. This concession is reflected in the State's brief before the circuit court, as well as that court's written order: "In this case, the parties agree that there are no genuine issues of material fact. Thus, this Court can properly dispose of the controversy on [plaintiff's] motion for summary judgment." Accordingly, the State cannot now argue that waiver applies because it was deprived of the opportunity to "build a record in response to the constitutional challenge." *Carpetland*, 201 Ill. 2d at 397.

In *Texaco-Cities*, the plaintiff, a pipeline transporter of crude oil and other petroleum products, filed a complaint for administrative review challenging a deci-

sion of the acting director of the Illinois Department of Revenue. The director determined that the gain the plaintiff realized from the sale of certain pipeline assets constituted business income, and that such income was subject to apportionment under section 304(d)(2) of the Illinois Income Tax Act (35 ILCS 5/304(d)(2) (West 1994)). In the circuit court, the plaintiff successfully argued that apportionment of the gain under section 304(d) amounted to a violation of the plaintiff's due process rights. The appellate court refused to consider that question, deeming it waived by the plaintiff's failure to raise the matter during the administrative proceedings. *Texaco-Cities Service Pipeline Co. v. McGaw*, 286 Ill. App. 3d 529, 535 (1997). On appeal to this court, we affirmed the judgment of the appellate court. *Texaco-Cities*, 182 Ill. 2d at 278-79. Citing the need to avoid piecemeal litigation and allow parties an opportunity to present evidence to refute the constitutional challenge, we held that the plaintiff's constitutional challenge "to the application of section 304(d)(2) in this case" was waived. *Texaco-Cities*, 182 Ill. 2d at 279.

The plaintiff in *Texaco-Cities*, unlike plaintiff in the instant case, did not mount a facial challenge to the statute. That is, the plaintiff did not argue that the apportionment formula of section 304(d) of the Illinois Income Tax Act was invalid in all cases. Rather, the plaintiff argued that application of section 304(d) to the specific income at issue in that case violated its due process rights. "[W]here it is alleged that a statute valid upon its face is applied in a discriminatory or arbitrary manner, the rule generally prevails that recourse must be had in the first instance to the appropriate administrative board." *Bank of Lyons v. County of Cook*, 13 Ill. 2d 493, 495 (1958); accord *Phillips v. Graham*, 86 Ill. 2d 274, 289 (1981). Such a constitutional infirmity "depends almost wholly upon a determination of factual matters in

which the specialized agency is thought to be more proficient." *Bank of Lyons*, 13 Ill. 2d at 495. Because plaintiff here did not argue that the zero tolerance law was applied in a discriminatory manner, we do not find *Texaco-Cities* controlling.

Under the facts of this case, we reject the State's argument that plaintiff waived review of his constitutional claim by not raising the matter before the Secretary of State. We caution litigants, however, that it remains advisable to raise all defenses before the administrative tribunal—even those outside of the agency's authority to decide—or risk waiver on review.

II. Exhaustion of Administrative Remedies

The State also argues that the doctrine of exhaustion of administrative remedies precluded plaintiff from pursuing his constitutional challenge in his declaratory judgment action.

Generally, a party may not seek judicial relief from an administrative action unless the party has exhausted all available administrative remedies. *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 551 (1999); *Phillips*, 86 Ill. 2d at 289. Requiring the exhaustion of administrative remedies "allows the administrative agency to fully develop and consider the facts of the cause before it; it allows the agency to utilize its expertise; and it allows the aggrieved party to ultimately succeed before the agency, making judicial review unnecessary." *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989). Here, it is undisputed that plaintiff pursued the only relief available to him before the administrative agency: a hearing before the Secretary of State. The Secretary of State's decision was not reviewable by any other administrative tribunal. The Secretary's decision was, however, subject to judicial review in the circuit court under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)). 625 ILCS 5/11—501.8(h) (West 2000).

Importantly, the exhaustion doctrine extends to administrative review in the circuit court. *County of Knox*, 188 Ill. 2d at 551. That is, where the Administrative Review Law is applicable and the circuit court may grant the relief a party seeks within the context of reviewing the agency's decision, a circuit court has no authority to entertain independent causes of action regarding the agency's actions. *County of Knox*, 188 Ill. 2d at 551-52, citing *Dubin v. Personnel Board*, 128 Ill. 2d 490, 498-99 (1989). "Any other conclusion would enable a party to litigate separately every alleged error committed by an agency in the course of the administrative proceedings." *Dubin*, 128 Ill. 2d at 499; see *Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312, 316 (1996) (affirming dismissal of class action complaint as improper collateral attack on final agency decision, where that decision was reviewable under the Administrative Review Act); *Burgess v. Board of Fire & Police Commissioners*, 275 Ill. App. 3d 315, 320 (1995) (affirming dismissal of action seeking declaratory judgment and writ of *mandamus* challenging agency hiring decision, where decision was reviewable under the Administrative Review Law).

In line with these authorities, the State argues that plaintiff's only recourse in this case was to file a complaint for administrative review and that plaintiff's complaint for declaratory judgment was an improper attempt to circumvent the administrative review process, thus running afoul of the exhaustion doctrine. We disagree.

Although this court has required relatively strict compliance with the exhaustion doctrine, we have also recognized exceptions. *Castaneda*, 132 Ill. 2d at 308. One such exception, relevant here, provides that a plaintiff who challenges the validity of a statute on its face need not exhaust administrative remedies. *Castaneda*, 132 Ill. 2d at 309; *County of Kane*, 116 Ill. 2d at 199. The reason

for this exception is apparent: administrative review is confined to the proofs offered and the record created before the agency. *Carpetland*, 201 Ill. 2d at 397. A facial attack to the constitutionality of a statute, which presents purely legal questions, is not dependent for its assertion or its resolution on the administrative record. *County of Kane*, 116 Ill. 2d at 199; *Board of Education*, 311 Ill. App. 3d at 488-89.

Plaintiff here mounted a facial challenge to the zero tolerance law, bringing himself within the foregoing exception to the exhaustion doctrine. Accordingly, plaintiff's failure to file a complaint for administrative review is not a bar to his declaratory judgment action.

### IV. *Res Judicata*

The State further argues that *res judicata* bars plaintiff's constitutional claim because plaintiff "could have" raised the matter in a complaint for administrative review. The State's argument misses the mark.

The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction acts as an absolute bar to a subsequent action between the same parties or their privies involving the same claim, demand, or cause of action. The bar extends to all matters that were offered to sustain or defeat the claim in the first action, as well as all matters that could have been offered for that purpose. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001); *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). *Res judicata* promotes judicial economy by preventing repetitive litigation and also protects parties from being forced to bear the unjust burden of relitigating essentially the same case. *River Park*, 184 Ill. 2d at 319, quoting *Henstein v. Buschbach*, 248 Ill. App. 3d 1010, 1015-16 (1993).

Here, the only prior decision to which *res judicata* might attach is the Secretary of State's decision uphold-

ing plaintiff's license suspension. See *Bagnola v. Smith-Kline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711, 717 (2002) ("Both *res judicata* and collateral estoppel apply to administrative decisions that are adjudicatory, judicial, or quasi-judicial in nature"); *O'Rourke v. Access Health, Inc.*, 282 Ill. App. 3d 394, 403 (1996) (same). As already discussed, however, the Secretary of State did not and could not decide plaintiff's constitutional claim. Thus, plaintiff's complaint for declaratory judgment does not qualify as a "relitigation" of the same case.

The State argues, however, that plaintiff cannot avoid *res judicata* by choosing to forgo the administrative review portion of the earlier proceeding. According to the State, because plaintiff "could have" raised his constitutional claim in a complaint for administrative review, plaintiff was precluded from raising the issue in his declaratory judgment action. Assuming, *arguendo*, that plaintiff could have raised his constitutional claim in a complaint for administrative review—even in the absence of a claim that the Secretary's decision was otherwise incorrect—the State cites no authority for the proposition that *res judicata* bars litigation of an issue that might have been raised in a proceeding that never took place.

Simply stated, *res judicata* prevents a party from taking two bites out of the same apple. *People v. Tenner*, 206 Ill. 2d 381, 395 (2002), quoting *People v. Partee*, 125 Ill. 2d 24, 37 (1988). Here, plaintiff took one bite: he litigated the facial validity of the statute in one proceeding in the circuit court, the only forum in which the issue could have been resolved. *Res judicata* does not bar plaintiff's constitutional challenge. Our holding is, of course, limited to the unique facts present here. In most cases involving agency action, the preferable route for cautious counsel to take is to file a complaint for administrative review and avoid the need to overcome the many procedural pitfalls plaintiff faced in the present case.

Having rejected the State's argument that plaintiff's constitutional claim was not properly before the circuit court, we turn now to the substantive issue on appeal: whether the zero tolerance law violates the equal protection or due process rights of drivers under the age of 21. We begin with an overview of the statute.

IV. The Zero Tolerance Law

Section 11—501.8 of the Illinois Vehicle Code provides that drivers under the age of 21 who are arrested, as evidenced by a Uniform Traffic Ticket for any violation of the Illinois Vehicle Code or similar provision of a local ordinance, shall be deemed to have given consent to chemical tests of blood, breath, or urine for the purpose of determining the alcohol content of the person's blood, provided the police officer has probable cause to believe that the driver has consumed any amount of an alcoholic beverage. 625 ILCS 5/11—501.8(a) (West 2000). The officer requesting the test must warn the driver that refusal to submit to the test, or submission to the test resulting in an alcohol concentration more than 0.00, may result in the suspension of driving privileges. 625 ILCS 5/11—501.8(c) (West 2000). The length of the suspension ranges from three months to two years, depending on whether the driver is a first offender, and whether the driver refuses the test or submits to a test that discloses an alcohol concentration more than 0.00. 625 ILCS 5/6—208.2(a) (West 2000). If the driver refuses the test or submits to a test disclosing the presence of alcohol, the officer must file a sworn report with the Secretary of State and notify the driver of the sanction and that it will be effective on the forty-sixth day following the date notice was given. The Secretary of State, upon receipt of the officer's sworn report, enters the appropriate suspension on the driver's record, and also notifies the driver of the sanction and its effective date. 625 ILCS 5/11—501.8(d) (West 2000).

A driver may contest a zero tolerance license suspension by requesting an administrative hearing with the Secretary of State. 625 ILCS 5/11—501.8(e) (West 2000). The hearing is subject to the same general requirements for all administrative hearings before the Secretary of State. 625 ILCS 5/11—501.8(e) (West 2000) (incorporating by reference the hearing provisions set forth in section 2—118 (625 ILCS 5/2—118 (West 2000))). As already noted, the statute expressly limits the scope of the hearing to seven issues. 625 ILCS 5/11—501.8(e) (West 2000). At the conclusion of the hearing, the Secretary of State may rescind, modify, or continue the sanction. If the Secretary of State does not rescind the sanction, the driver may apply for a restricted driving permit, which may be granted by the Secretary of State for good cause shown. 625 ILCS 5/11—501.8(e) (West 2000). A final decision of the Secretary of State is subject to judicial review pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)), expressly adopted by the zero tolerance statute. 625 ILCS 5/11—501.8(h) (West 2000).

The zero tolerance law, like all statutory enactments, carries a strong presumption of constitutionality. See *In re Estate of Jolliff*, 199 Ill. 2d 510, 517 (2002); *Wickham v. Byrne*, 199 Ill. 2d 309, 316 (2002). This presumption means that we must uphold the statute's validity if reasonably possible, and that plaintiff, as the party challenging the statute, must bear the burden of clearly establishing the statute's constitutional infirmity. *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 21 (2003). Because the constitutionality of a statute presents an issue of law, our review is *de novo. Allen*, 208 Ill. 2d at 21.

V. Equal Protection

The analysis employed by this court to assess equal protection claims is the same under both the United States and Illinois Constitutions (U.S. Const., amend.

XIV, § 1; Ill. Const. 1970, art. I, § 2). *People v. Fisher*, 184 Ill. 2d 441, 450 (1998). The guarantee of equal protection of the law requires the government to treat similarly situated individuals in a similar manner. *In re R.C.*, 195 Ill. 2d 291, 309 (2001); *Fisher*, 184 Ill. 2d at 450. The government may not accord different treatment to individuals who have been placed by statute into different classes based on criteria wholly unrelated to the purpose of the legislation. The government, however, is not forbidden from drawing proper distinctions in legislation among different categories of people. *R.C.*, 195 Ill. 2d at 309.

The level of scrutiny applicable in reviewing legislative classifications depends on the nature of the classification. Where the statute creates a "suspect" classification, such as one based on race or national origin, or impinges on fundamental rights, the statute is subject to strict scrutiny. Statutes which do not implicate these concerns are subject to rational basis review. *In re A.A.*, 181 Ill. 2d 32, 37 (1998); *People v. Reed*, 148 Ill. 2d 1, 7 (1992). The plaintiff maintains that the Illinois Vehicle Code impermissibly classifies drivers based on age. Age is not a suspect classification under the equal protection clause and need only satisfy the rational basis test. *Reed*, 148 Ill. 2d at 8; see also *Kimel v. Florida Board of Regents*, 528 U.S. 62, 83, 145 L. Ed. 2d 522, 542, 120 S. Ct. 631, 645-46 (2000) (reaffirming that age is not a suspect classification under the federal equal protection clause). Under the rational basis test our review is limited and deferential; we inquire only "whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal." *A.A.*, 181 Ill. 2d at 38. If we can reasonably conceive of any set of facts to justify the statutory classification, we will uphold the statute. *A.A.*, 181 Ill. 2d at 38; *Reed*, 148 Ill. 2d at 8.

The crux of plaintiff's equal protection argument is that, had he been 21 years of age or older at the time of his license suspension, he could have challenged the suspension at a judicial hearing in the circuit court, but because he was under 21 years of age, he was required to pursue his challenge at an administrative hearing. According to plaintiff, this purportedly age-based differential treatment is not rationally related to the statute's purpose. We agree with the State that plaintiff misreads the Illinois Vehicle Code.

In support of his argument that a judicial hearing would have been available to him, had he been 21 years of age or older, plaintiff cites to section 11—501.1 (625 ILCS 5/11—501.1 (West 2000)) and section 2—118.1 (625 ILCS 5/2—118.1 (West 2000)), part of our DUI law. Section 11—501 prohibits a person from driving while under the influence of alcohol, drugs or other intoxicating compound. 625 ILCS 5/11—501(a) (West 2000). Under the implied-consent provisions, persons arrested under the DUI law face summary suspension of their driving privileges where testing discloses an alcohol concentration of 0.08 or more or where the driver refuses to submit to a test. 625 ILCS 5/11—501.1(c) (West 2000). Under section 2—118.1, summary suspensions under the DUI law may be challenged at a judicial hearing. 625 ILCS 5/2—118.1(b) (West 2000).

Plaintiff's reliance on the DUI law is puzzling because plaintiff was not arrested for DUI. Accordingly, the provisions of the DUI law governing challenges to summary suspensions under that law are irrelevant. We note, in any event, that had plaintiff been arrested for DUI, he would have had the same access to a judicial hearing to contest the summary suspension of his driving privileges as any other driver because the DUI law does not distinguish among drivers on the basis of age. The DUI law is age neutral.

The circuit court, however, looked past plaintiff's age-based argument and ruled that any individual threatened with the summary suspension of his or her driver's license should be treated the same. Essentially, the circuit court determined that persons faced with summary suspension of driving privileges under the zero tolerance law are similarly situated to persons faced with summary suspension of driving privileges under the DUI law for purposes of equal protection review. We disagree.

Under the DUI law, the implied-consent provisions are only triggered where the person is arrested for driving under the influence of alcohol or drugs. 625 ILCS 5/11—501(a) (West 2000). A person arrested under the DUI law faces the prospect of criminal prosecution and, if found guilty, faces the imposition of criminal penalties and revocation of his or her driving privileges. 625 ILCS 5/11—501(c), (g) (West 2000). The summary suspension provisions are intended to promptly remove impaired drivers from the road, pending criminal prosecution. *People v. Moore*, 138 Ill. 2d 162, 166 (1990).

In contrast, the implied-consent provisions of the zero tolerance law are triggered where a driver under the legal drinking age violates any provision of the Illinois Vehicle Code and the officer has probable cause to believe he or she has consumed any amount of an alcoholic beverage. 625 ILCS 5/11—501.8(a) (West 2000). The summary suspension provisions are not necessarily tied to removing impaired drivers from the road, since suspension may result from the consumption of even small amounts of alcohol. Rather, the summary suspension provisions provide youthful drivers an incentive—not found in the DUI law—to refrain from consuming any amount of alcohol. A young driver whose license is suspended under the zero tolerance law faces no other collateral consequences, such as criminal prosecution. Indeed, unlike the DUI law, the zero tolerance law

prohibits evidence of the driver's blood-alcohol concentration to be used in any other civil or criminal proceeding. Compare 625 ILCS 5/11—501.1(c) (West 2000) with 625 ILCS 5/11—501.8(f) (West 2000).

We conclude that persons faced with summary suspension of driving privileges under the zero tolerance law are not similarly situated to persons faced with summary suspension under the DUI law for purposes of equal protection review, and the circuit court erred in finding the zero tolerance law unconstitutional on that basis.

## VI. Due Process

The circuit court also ruled that the zero tolerance law violates the procedural due process rights of drivers under the age of 21.

A fair trial before a fair tribunal is a basic requirement of due process, a requirement that applies to both courts and administrative agencies which perform adjudicatory functions. *Scott v. Department of Commerce & Community Affairs*, 84 Ill. 2d 42, 54-55 (1981), quoting *Withrow v. Larkin*, 421 U.S. 35, 46, 43 L. Ed. 2d 712, 723, 95 S. Ct. 1456, 1464 (1975). Plaintiff maintains that he was denied his right to a fair and impartial hearing because the hearing was conducted by the same official who suspended his license. Plaintiff argues that "[w]hen the Secretary of State acts as both prosecutor and judge, the proceeding cannot be impartial."

We note our disagreement with plaintiff's assertion that the Secretary of State "prosecutes" license suspensions under the zero tolerance law. The process for summary suspensions is purely administrative. That is, the zero tolerance law *requires* the Secretary of State to suspend a person's driving privileges upon the receipt of a law enforcement officer's sworn report that the driver refused a chemical test or that the chemical test disclosed the presence of alcohol. 625 ILCS 5/11—501.8(d) (West 2000). The Secretary of State exercises no discretion, and

unless the driver wishes to contest the suspension, it will simply run its course and the matter is closed.

Plaintiff's improper characterization aside, we will not presume, as plaintiff does, that the Secretary of State's hearing officers are necessarily biased. Indeed, "[w]ithout a showing to the contrary, state administrators 'are assumed to be [individuals] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' " *Withrow v. Larkin*, 421 U.S. 35, 55, 43 L. Ed. 2d 712, 728, 95 S. Ct. 1456, 1468 (1975), quoting *United States v. Morgan*, 313 U.S. 409, 421, 85 L. Ed. 1429, 1435, 61 S. Ct. 999, 1004 (1941); accord *Scott*, 84 Ill. 2d at 55; *Collura v. Board of Police Commissioners*, 113 Ill. 2d 361, 370 (1986); *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 95 (1992). Accordingly, we reject plaintiff's unsubstantiated claim that the administrative hearing contemplated under the zero tolerance law denies drivers their right to a hearing before a neutral tribunal.

In concluding that the zero tolerance law violates the due process rights of drivers, the circuit court did not simply rely on the presumed bias of the hearing officers. The circuit court also emphasized the differences between an administrative hearing before the Secretary of State to contest a zero tolerance suspension, and a judicial hearing to contest a DUI suspension. The circuit court implicitly concluded that a judicial hearing is superior to an administrative hearing and that the driver is so disadvantaged by the administrative procedure under the zero tolerance law as to result in a violation of the driver's right to procedural due process. We disagree.

Contrary to the circuit court's finding, the judicial license suspension hearing contemplated under the DUI law and the administrative license suspension hearing contemplated under the zero tolerance law are not so dif-

ferent. Indeed, in both types of license suspension hearings, the scope of the hearing is expressly limited by statute. Compare 625 ILCS 5/11—501.8(e) (West 2000) (limiting zero tolerance suspension hearing to seven issues) with 625 ILCS 5/2—118.1(b) (West 2000) (limiting DUI suspension hearing to four issues). In both types of hearings, the person challenging the suspension bears the burden of proof. See *People v. Orth*, 124 Ill. 2d 326, 337-38 (1988) (motorist challenging DUI suspension bears the burden of proof); 92 Ill. Adm. Code § 1001.620 (2003) (zero tolerance petitioner carries the burden of proof). In both instances, the hearing may be conducted upon a review of the officer's own official reports, provided, however, that the driver may subpoena the officer. 625 ILCS 5/2—118.1(b) (West 2000); 625 ILCS 5/11—501.8(e) (West 2000). Although a person faced with summary suspension under the zero tolerance law must challenge his suspension initially before the Secretary of State, judicial review is not precluded. Administrative review in the circuit court is available. 625 ILCS 5/11—501.8(h) (West 2000). Moreover, the standard of review applicable to the Secretary of State's findings in a zero tolerance license suspension case is the same standard applicable to appellate review of circuit court findings in a DUI license suspension case. See *Carpetland*, 201 Ill. 2d at 369 (agency determinations of fact are reviewed under a manifest weight of the evidence standard); *Orth*, 124 Ill. 2d at 341 (trial court's finding that motorist established a *prima facie* case for rescission will not be overturned on appeal unless against the manifest weight of the evidence). We find no basis to conclude, as the circuit court did, that the administrative hearing under the zero tolerance law was substantially different from the judicial proceeding under the DUI law and no reason to conclude that the administrative procedure deprives drivers of procedural due process.

## CONCLUSION

We conclude that plaintiff's constitutional challenge to the zero tolerance statute was properly before the circuit court, but that the circuit court erred in finding the statute unconstitutional on equal protection and due process grounds. Accordingly, we reverse the judgment of the circuit court.

*Reversed.*