NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240955-U

NO. 4-24-0955

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 27, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| WILLIAM GIBSON, | ) | Petition for |
|        Petitioner, | ) | Review of an Order of the |
|        v. | ) | Human Rights Commission |
| THE HUMAN RIGHTS COMMISSION, THE | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and THE | ) | |
| MOUNT OLIVE POLICE DEPARTMENT, | ) | |
|        Respondents. | ) | No. 24-0105 |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The Human Rights Commission did not abuse its discretion by upholding
the Department of Human Rights' dismissal for lack of substantial evidence of
discrimination.

¶ 2    In August 2022, petitioner, William Gibson, filed a charge with the Department of
Human Rights (Department), alleging that the Mount Olive Police Department (Mount Olive)
(1) denied him work due to his (a) conviction record and (b) arrest record, (2) aided and abetted
the Illinois Law Enforcement and Training Standards Board (ILETSB) in committing a violation
of the Illinois Human Rights Act (Act) (775 ILCS 5/2-103, 2-103.1, 6-101(B) (West 2022)), and
(3) discharged him due to his (a) conviction record and (b) arrest record.

¶ 3    In December 2023, the Department dismissed Gibson's charge for lack of
substantial evidence. In March 2024, Gibson filed a request for review of the Department's
decision with the Human Rights Commission (Commission). In June 2024, the Commission

sustained the Department's dismissal.

¶ 4        Gibson petitions this court for direct administrative review of the Commission's decision, arguing that the decision should be overruled because (1) he presented substantial evidence of employment discrimination and (2) his due process rights were violated. We disagree and affirm.

¶ 5                                    I. BACKGROUND

¶ 6                                    A. The Charge

¶ 7        On August 3, 2022, Gibson filed a charge of discrimination with the Department, which was perfected on May 8, 2023, alleging that Mount Olive (1) denied him work due to his conviction record (count A), arrest record (count B), and to aid and abet the ILETSB (count C); and (2) discharged him due to his conviction record (count D), arrest record (count E), and to aid and abet the ILETSB (count F), all in violation of sections 2-103, 2-103.1, and 6-101(B) of the Act (*id.*).

¶ 8        Specifically, Gibson alleged the following:

> "On February 7, 2022, Molly Margaritis, Chief, hired me as a police officer;
>
> * * *
>
> On January 16, 2020, I participated in a protected activity when I fil[ed] [Department] charge number 2020SF1710 against [ILETSB]. On December 14, 2021, I also filed [Department] charge number 2022SN1218, also against ILETSB;
>
> From February 7, 2022, [to] May 10, 2022, [Mount Olive] failed to place me on the schedule or put me to work. I have an 'Approved' status through

- 2 -

[ILETSB] thus I am allowed to work for up to a year without a training waiver. Margaritis told me that I would not work until ILETSB approved my training waiver. A training waiver from [*sic*] shows that my police training in Missouri meets all Illinois police training standards[.]

\* \* \*

On May 10, 2022, [Mount Olive] through Molly Margaritis, Chief, discharged me because [ILETSB] denied my training waiver[.]

\* \* \*

On May 10, 2022, [Mount Olive] through Molly Margaritis, Chief, aided and abetted ILETSB, Anthony Cobb, ILETSB Deputy Director, John Keigher, ILETSB Attorney[,] and Lee Ryker, ILETSB Investigator, by discharging me on May 10, 2022[.]"

¶ 9    Gibson further alleged that other similarly situated individuals with arrest and conviction records were treated differently and Mount Olive's adverse actions of failing to place him on a work schedule and subsequently discharging him "followed filing discrimination charges within such a timeframe as to raise an inference of retaliatory motivation."

¶ 10    B. The Proceedings Before the Department

¶ 11    1. *The Investigation*

¶ 12    The Department investigated the charges, reviewing evidence consisting of (1) Gibson's testimony, (2) Margaritis's testimony, (3) two orders to expunge and seal Gibson's criminal records, (4) a copy of section 8.2 of the Illinois Police Training Act (50 ILCS 705/8.2 (West 2022)), (5) a copy of Gibson's March 31, 2022, training waiver denial, (6) Mount Olive's job description for a "patrol man," and (7) ILETSB's employment records for Gibson.

¶ 13        The Commission set forth the following summary of the evidence from the

Department's investigation report in its June 2024 order:

        "[Gibson] stated that he was hired as a police officer on February 7, 2022,

    by [Mount Olive]. He stated that in 2004, he was arrested and convicted of two

    misdemeanors. In 2018, [Gibson] had the misdemeanors sealed and expunged.

        [Gibson] stated that, in order to work as a police officer in Illinois, one had

    to either attend a police academy or have a training waiver from ILETSB.

    [Gibson] stated that he did not attend a police academy, but had received training

    waivers from ILETSB in the past, because he had been certified as a police officer

    in Missouri. [Gibson] stated that [Mount Olive] would not allow him to work until

    ILETSB approved a training waiver, although he believed he could work for up to

    a year without the waiver.

        [Gibson] stated that on March 31, 202[2], ILETSB denied [Mount Olive's]

    request for a waiver. [Gibson] stated that Police Chief Molly Margaritis would not

    assign him work because she did not want to upset ILETSB. [Gibson] stated that

    [Mount Olive] could have requested a hearing to contest the denial, but it did not.

    [Gibson] stated that Margaritis discharged him on May 10, 2022, and then

    backdated the discharge to March 31, 2022.

        According to Margaritis, she interviewed [Gibson] on February 2, 2022,

    for the police officer position, but told him that it was contingent on receiving a

    training waiver from ILETSB. [Mount Olive's] patrol man job description

    indicated that among the minimum qualifications for the job was to successfully

    complete basic academy training provided by ILETSB. Section 8.2 of the Illinois

- 4 -

Police Training Act provides that a person hired as a part-time law enforcement officer must obtain a certificate from ILETSB attesting to the successful completion of the part-time police training course or comparable course, or must produce a training waiver. 50 ILCS 705/8.2(a).

Margaritis stated that she did not tell [Gibson] that she did not want to upset ILETSB. On March 31, 2022, ILETSB denied the training waiver request for [Gibson] because [Gibson] had never completed a course in basic law enforcement training in Illinois or any other state. The denial indicated that waivers granted in the past were only valid for the period of employment for which they were requested. Margaritis stated that [Mount Olive] was required to adhere to ILETSB's decision. Margaritis denied that the decision not to assign [Gibson] work was based on his criminal history or prior issues with ILETSB.

Margaritis stated that she informed [Gibson] on March 31, 2022, that he was denied a waiver and that [Mount Olive] would discharge him. She stated that she might have given [Gibson] time to see if he could contest the results, but that he was discharged effective on March 31, 2022. [Mount Olive's] records indicated that [Gibson] was employed from February 7 to March 31, 2022."

¶ 14                               2. *The Department's Decision*

¶ 15          On December 19, 2023, the Department dismissed Gibson's charge for lack of substantial evidence. The Department provided the following findings and analysis for counts A, B, and C:

"The investigation revealed that on February 7, 2022, [Mount Olive] hired [Gibson] as a police officer. [Mount Olive] admits that in order to work as a

police officer in Illinois, one would need to attend a police academy or obtain a waiver. [Gibson] alleges that he could work for up to a year without a training waiver. *** Documented evidence indicates that without obtaining certification, a person cannot perform police duties. The investigation revealed that [Gibson] did not attend an Illinois police academy and was denied a waiver.

* * *

The evidence indicates that [Gibson] could not perform police duties as a matter of law. There is no evidence of criminal history animus. There is no evidence of retaliatory animus. There is not substantial evidence that [Mount Olive] denied [Gibson] work due to his criminal history or aiding ILETSB in retaliation."

¶ 16    The Department provided the following findings and analysis for counts D, E, and F:

"[Mount Olive] maintains that [Gibson's] hiring was contingent upon being able to obtain a waiver from ILETSB and that when it was denied, he was unable to work and subsequently discharged. The investigation revealed that on February 7, 2022. [Mount Olive] hired [Gibson] as a police officer. [Gibson] admits that in order to work as a police officer in Illinois, one would need to attend a police academy or obtain a waiver. [Gibson] alleges that he could work for up to a year without obtaining a training waiver. [Mount Olive] maintains that [Gibson] could not perform police duties and that they must adhere to ILETSB's orders. Documented evidence indicates that without certification, a person cannot perform police duties. The investigation revealed that [Gibson] did not attend an

Illinois police academy and was denied a waiver. Documented evidence indicates that minimum qualifications for patrol man is to successfully complete basic academy training provided by ILETSB.

* * *

There is not evidence to suggest that on March 31, 2022, [Mount Olive] discharged [Gibson] due to his arrest/criminal record or aided and abetted ILETSB in retaliation. The evidence indicates that [Gibson] could not perform police duties as a matter of law and failure to be certified results in a forfeiture of the position. *** There is not substantial evidence that [Mount Olive] discharged [Gibson] due to his arrest/criminal history or aiding ILETSB in retaliation.”

¶ 17            C. The Proceedings Before the Commission

¶ 18            In March 2024, Gibson requested a review of the Department’s dismissal with the Commission. In June 2024, the Commission entered an order sustaining the Department’s decision.

¶ 19            Regarding counts A, B, and C, the Commission concluded as follows:

“[Gibson] first argues that [Mount Olive] denied him work due to his conviction record (Count A) and arrest record (Count B). *** Here, [Gibson] has failed to establish a *prima facie* case of discrimination because he was not qualified for the job of police officer because he had not completed a basic training course or been issued a training waiver from ILETSB.

[Gibson] also argues that [Mount Olive] denied him work to aid and abet ILETSB (Count C). While it is unlawful to aid, abet, compel, or coerce a person to commit any violation of the Act, 775 ILCS 5/6-101(B), it is unclear from

- 7 -

[Gibson's] charge of discrimination or the investigation report what violation of the Act [Gibson] is alleging that [Mount Olive] was aiding and abetting. Because there is no evidence to support the allegation that [Mount Olive] failed to hire [Gibson] in order to aid and abet ILETSB to commit a violation of the Act, [Gibson's] claim fails.

A generous reading of the charge would interpret the allegation in Count C to be a retaliation claim under Section 6-101(A) rather than an aiding-and-abetting claim under Section 6-101(B). Even if viewed as a retaliation claim, however, the claim fails because there is insufficient evidence of a *prima facie* case of retaliation ***. *** [Gibson] maintains in his charge that he engaged in a protected activity on January 16, 2020, and on December 14, 2021, when he filed charges of discrimination against ILETSB. [Gibson] did not, however, establish that [Mount Olive] knew about the protected activity. *** Furthermore, [Gibson] was not qualified to be hired by [Mount Olive], as noted above, and thus did not suffer an adverse action. Thus, Count C was properly dismissed even when viewed as a retaliation claim."

¶ 20     Regarding counts D, E, and F, the Commission concluded as follows:

"[Gibson] argues that [Mount Olive] discharged him due to his conviction record (Count D) and arrest record (Count E). *** Here, [Gibson's] claims fail because there was no evidence that a police officer who was hired contingent on getting a training waiver from ILETSB, who did not have a conviction or arrest record, was not discharged when ILETSB denied the waiver.

[Gibson's] final argument is that [Mount Olive] discharged him to aid and

abet ILETSB. (Count F) For the same reasons discussed above in Count C, [Gibson's] claim fails because he did not allege a violation of the Act that [Mount Olive] was aiding or abetting, and any retaliation claim fails because [Mount Olive] was not authorized by statute to employ [Gibson] without a training waiver.

In his Request, [Gibson] continues to argue that [Mount Olive] could have filed an appeal to ILETSB requesting that they reverse their denial of a training waiver. However, the Act does not require employers to do whatever [they] can to ensure that a job applicant become[s] qualified. The Act only requires that [Mount Olive] hire or discharge employees for nondiscriminatory reasons. The Commission concludes that the [Department's] dismissal of the charge was in accordance with the Act."

¶ 21      This petition for direct administrative review followed.

¶ 22                    II. ANALYSIS

¶ 23      Gibson petitions this court for direct administrative review of the Commission's decision, arguing that the decision should be overruled because (1) he presented substantial evidence of employment discrimination and (2) his due process rights were violated. We disagree and affirm.

¶ 24                 A. Gibson's Arguments on Appeal

¶ 25      Gibson makes the following three arguments, which we set forth exactly as they appear in his appellate brief:

"[(1)] Illinois human rights commission are relying on false information from John Keigher and omission of evidence by attorney john keigher and lack of

- 9 -

due diligence from attorney general robert hogue who didn't do his own investigation into this case. John keigher along with deputy director anthony cobb had a conf. call with chief mt.olive so no record. Violated appellant's fourteenth amendment due process.

* * *

[(2)] illinois human rights commission relying on false information from Police Chief Molly Margaritis evidence illinois E-Form means your hired. There is no hiring on contingent on receiving a waiver and she lied about upsetting the ILETSB. She also illegally backdated a state form saying I was Fired March 31, 2022 which was May 10, 2022.

* * *

[(3)] illinois human rights commission relying on false information and didn't look at the evidence about the police academy in Memo 2000 explaining that I was trained and would be redundant to go to the police academy. Brent Fischer illegally had me fired and decertified by saying I wasn't allowed to attend any academy in Illinois. [*sic*]"

¶ 26 Gibson's arguments fall into two categories—he argues (1) his due process rights were violated and (2) the Commission's decision was "clearly erroneous."

¶ 27 B. Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020)

¶ 28 As an initial matter, we note that in both of their responsive briefs, respondents request that this court strike or disregard parts of Gibson's opening brief, contending that it does not "contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment," as required by Rule 341(h). In addition, respondents contend

that Gibson failed to refer to the pages of the record on appeal (see *id.*) and his brief did not "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on," as required by subsection (h)(7) of Rule 341 (see Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)).

¶ 29 We agree with respondents' assertion that Gibson's *pro se* brief fails to conform with the requirements of Rule 341(h). Most notably, his brief (1) does not contain an accurate statement of facts, without comment or argument and (2) is nearly devoid of any legal argument or citation to legal authority. Based on Gibson's noncompliance with these requirements, his appeal is subject to dismissal. *Marzano v. Department of Employment Security*, 339 Ill. App. 3d 858, 861 (2003). Nevertheless, because the issues are apparent and we have the benefit of cogent briefs from respondents, we choose to address the issues in Gibson's appeal. See *Affiliated Health Group, Ltd. v. Devon Bank*, 2016 IL App (1st) 152685, ¶¶ 14-15 (declining to strike the brief when the violation of appellate rules did not hinder review). However, we will disregard any inappropriate factual assertions that are not contained in the record. *Id.* ¶ 15.

¶ 30 C. Gibson's Due Process Arguments

¶ 31 Regarding Gibson's due process arguments, nothing in the record indicates that his due process rights were violated by the Department or the Commission in the investigation and dismissal of his charge.

¶ 32 "A fair trial before a fair tribunal is a basic requirement of due process." *Arvia v. Madigan*, 209 Ill. 2d 520, 540 (2004). However, the proceedings before the Department are investigatory and only become adjudicatory when the Department issues a complaint. *Jabbari v. Human Rights Comm'n*, 173 Ill. App. 3d 227, 232 (1988). Procedural rights that are essential to a judicial or quasi-judicial proceeding do not apply to the Department's fact-finding or

investigative proceedings. *Willis v. Department of Human Rights*, 307 Ill. App. 3d 317, 325 (1999).

¶ 33        To the extent that Gibson takes issue specifically with the Department's investigation, Gibson provides no explanation for how his rights were violated; instead, he merely expresses his dissatisfaction with the results of the investigation and the credibility assessments inherent to the Department's ultimate decision to dismiss his charge. As for his suggestion that he was deprived of a fair and impartial hearing before the Commission, Gibson fails to provide any legal or evidentiary support to overcome the presumption that the Commission was "objective and capable of judging the controversy fairly." *Cannici v. Village of Melrose Park*, 2019 IL App (1st) 181422, ¶ 57; see *Arvia* 209 Ill. 2d at 541 ("[W]ithout a showing to the contrary, state administrators are assumed to be individuals of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." (Internal quotation marks omitted.)).

¶ 34        The record shows that Gibson was able to submit his charge to the Department, had his charge investigated, was given notice and an explanation for why the charge was dismissed, and was able to appeal the dismissal of his charge with the Commission. Gibson's due process claims amount to little more than a disagreement with (1) how the investigation into his charge was conducted and (2) the Commission's findings. Accordingly, his due process claims are without merit.

¶ 35        D. The Commission's Decision Affirming the Department's Dismissal for Lack of                                    Substantial Evidence

¶ 36        Gibson also argues that the Commission erred by affirming the Department's dismissal of his charge because he presented substantial evidence of discrimination. We disagree.

¶ 37                    1. *The Applicable Law and Standard of Review*

¶ 38            It is a civil rights violation under the Act for an employer "to use a conviction record *** as a basis to refuse to hire *** or act with respect to *** terms, privileges or conditions of employment" unless an employer engages in an interactive assessment to determine if a conviction disqualifies an applicant from the position applied for. 775 ILCS 5/2-103.1(A) (West 2022). It is also a civil rights violation for an employer "to inquire into or to use an arrest record *** as a basis to refuse to hire *** or act with respect to *** discharge *** tenure or terms, privileges or conditions of employment." *Id.* § 2-103(A).

¶ 39            Under the Act, people who believe that their civil rights have been violated may file a charge with the Department, which then investigates the allegations in the charge. *Id.* §§ 7A-101, 7A-102(A-D). An investigator prepares a report for the director of the Department, who determines whether there is "substantial evidence" to pursue the charge. *Id.* § 7A-102(D)(1), (2). Substantial evidence is defined as evidence that a reasonable mind would accept as sufficient to support the complainant's allegations and which "consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id.* § 7A-102(D)(2).

¶ 40            If the Department finds that the charge lacks substantial evidence, it must dismiss the charge, and the complainant may then request the Commission's review of the Department's decision. *Id.* §§ 7A-102(D)(3), 8-103(A). In conducting its review, the Commission "may consider the Department's [investigation] report, any argument and supplemental evidence timely submitted [by the parties], and the results of any additional investigation conducted by the Department in response to the request [for review]." *Id.* § 8-103(B).

¶ 41            If the Commission sustains the dismissal, the complainant may seek review directly in the appellate court. *Id.* § 8-111(B)(1). We review the decision of the Commission, not

the Department. *Spencer v. Illinois Human Rights Comm'n*, 2021 IL App (1st) 170026, ¶ 31.

¶ 42 The Act provides that we review the Commission's factual findings under the manifest weight of the evidence standard. 775 ILCS 5/8-111(B)(2) (West 2022). However, we review the Commission's conclusions of law *de novo* and its ultimate decision for an abuse of discretion. *Spencer*, 2021 IL App (1st) 170026, ¶¶ 31-32. We will not find an abuse of discretion unless the Commission's decision is arbitrary or capricious, meaning that " 'it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise.' " *Id.* ¶ 32 (quoting *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33).

¶ 43 A complainant may prove discrimination by presenting direct evidence of discrimination, such as proof of a racial slur or a written or oral admission, or through indirect evidence. *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). When there is no direct evidence of discrimination, the complainant bears the burden to establish a *prima facie* case by a preponderance of the evidence through indirect evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 44                                   2. *This Case*

¶ 45 Gibson argues that the Commission's decision affirming the Department's dismissal of his claims that Mount Olive (1) denied him work, (2) wrongfully discharged him, and (3) aided and abetted the ILETSB was erroneous. We disagree and address each claim in turn.

¶ 46                          a. Gibson's Being Denied Work

¶ 47 Gibson alleges that Mount Olive discriminated against him by denying him work

based on his arrest and conviction records, in violation of sections 2-103 and 2-103.1(A) of the Act. See 775 ILCS 5/2-103, 2-103.1(A) (West 2022)).

¶ 48    To establish a *prima facie* case of employment discrimination in a failure to hire case, a petitioner must show that (1) he was a member of a protected class, (2) he applied for and was qualified for the position, (3) he was rejected despite his qualifications, and (4) the position remained open and the employer sought other applicants from persons with his qualifications. *Champaign-Urbana Public Health District v. Illinois Human Rights Comm'n*, 2022 IL App (4th) 200357, ¶ 204.

¶ 49    Here, the Commission found that Gibson failed to establish that he was qualified for the patrol man position. As the Department noted, the Illinois Police Training Act provides that a part-time law enforcement officer must have (1) completed an ILETSB-certified training course, (2) completed its recognized equivalent, or (3) obtained the ILETSB's waiver of that requirement. See 50 ILCS 705/8.2(a) (West 2022). Because it is undisputed that Gibson had not attended an Illinois police academy or its equivalent and did not receive a waiver from the ILETSB to work for Mount Olive, the Commission concluded he was not qualified for the patrol man position. Nothing in the record refutes the Commission's conclusion.

¶ 50    Accordingly, we conclude that the Commission did not abuse its discretion when it sustained the Department's dismissal of counts A and B for discrimination on the basis of his arrest or convictions records.

¶ 51                                b. Wrongful Discharge

¶ 52    Gibson alleges that Mount Olive discriminated against him by discharging him based on his arrest and conviction records, in violation of sections 2-103 and 2-103.1(A) of the Act. See 775 ILCS 5/2-103, 2-103.1(A) (West 2022)).

¶ 53    To establish a *prima facie* case of employment discrimination for alleged wrongful discharge, a petitioner must show that (1) he was a member of a protected class, (2) he was meeting the employer's legitimate business expectations, (3) he suffered an adverse employment action, and (4) the employer treated a similarly situated employee outside of the protected class more favorably. *Champaign-Urbana Public Health District*, 2022 IL App (4th) 200357, ¶ 188.

¶ 54    Here, the Commission found that Gibson did not make a *prima facie* case because there was no evidence supporting the fourth requirement—namely, that a police officer with no arrest record who was hired contingent on obtaining a training waiver was *not* discharged when the ILETSB denied the waiver. Because we agree that the record is devoid of any evidence of another similarly situated employee outside the protected class who was treated more favorably, we conclude that the Commission did not abuse its discretion when it sustained the dismissal of counts D and E for discrimination on the basis of Gibson's arrest or conviction records.

¶ 55                    c. Aiding and Abetting

¶ 56    Last, we note that Gibson's final claim—namely, that Mount Olive aided and abetted the ILETSB by denying him work and discharging him—is difficult to interpret, as the Commission also noted when it wrote, "[I]t is unclear from [Gibson's] charge of discrimination or the investigation report what violation of the Act [Gibson] is alleging that [Mount Olive] was aiding and abetting." After the Commission concluded that an aiding and abetting claim was without merit because Gibson failed to allege any violation of the Act that Mount Olive aided and abetted, the Commission noted that the claim could also be interpreted as a retaliation claim, which it likewise rejected.

¶ 57    To state a *prima facie* case for aiding and abetting a violation of the Act, a

petitioner must show the following:

> "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be regularly aware of his or her role as part of the overall or tortious activity at the time he or she provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation."
>
> *M.U. v. Team Illinois Hockey Club, Inc.*, 2022 IL App (2d) 210568, ¶ 46.

Of course, this means that the petitioner must allege an underlying violation of the Act. *Id.*

¶ 58　　　　　Gibson failed to make this showing. There is no evidence that the ILETSB committed any wrongful act. Although Gibson implied that the ILETSB denied the training waiver in retaliation for his filing of prior discrimination charges, the record contains no evidence supporting that implication, and he cites none in his brief. He instead relies on baseless accusations of lies and forgery to support his claim. Accordingly, we conclude that the Commission did not abuse its discretion by affirming the Department's dismissal of his aiding and abetting claim.

¶ 59　　　　　We also reach the same result if we give the same "generous" reading to his allegations as the Commission did in its order affirming the Department's dismissal and interpret the charge as alleging retaliation by Mount Olive for Gibson's filing a charge against the ILETSB. To establish a *prima facie* case of retaliation under the Act, a petitioner must show that (1) he engaged in a protected activity, (2) his employer committed a material adverse act against him, and (3) a causal nexus existed between the protected activity and the adverse action. *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 634 (2006). A "material adverse act" in the context of a retaliation claim is an act that "a reasonable employee would have found *** materially adverse, which in this context means it well might have dissuaded a reasonable

- 17 -

worker from making or supporting a charge of discrimination." (Internal quotation marks omitted.) *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

¶ 60    We agree with the Commission that Gibson failed to show that Mount Olive committed a material adverse act because he was not authorized to work as a police officer in Illinois. No reasonable employee would be dissuaded from making a charge of discrimination by the discharge of an employee who was not authorized for his continued employment.

¶ 61    Accordingly, we conclude that the Commission did not abuse its discretion by affirming the Department's dismissal of counts C and F.

¶ 62                                III. CONCLUSION

¶ 63    For the reasons stated, we affirm the decision of the Commission.

¶ 64    Affirmed.