(No. 97791.—)

# RYAN D. GUMMA, Appellee, v. JESSE WHITE, Secretary of State of Illinois, Appellant.

*Opinion filed July 21, 2005.*

Lisa Madigan, Attorney General, of Springfield (Gary Feinerman, Solicitor General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), for appellant.

Angelo Del Marto and Michael K. Durkin, of Storino, Ramello & Durkin, of Rosemont, for appellee.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

In this appeal we review the Secretary of State's decision to deny Ryan Gumma's petition to rescind the summary suspension of his driver's license, which was

imposed pursuant to section 11—501.8 of the Illinois Vehicle Code, commonly known as the zero-tolerance law. 625 ILCS 5/11—501.8 (West 1998). On administrative review, the circuit court of Cook County held that the Secretary of State's denial of Gumma's petition was against the manifest weight of the evidence and the appellate court affirmed this ruling. 345 Ill. App. 3d 610. However, in affirming, the appellate court concluded that an earlier judgment, rendered in a related municipal ordinance violation proceeding, operated to collaterally estop the Secretary of State from using the results of Gumma's breath-analysis test to support his zero-tolerance suspension.

We granted the Secretary of State's petition for leave to appeal and now hold that the appellate court erred when it held that the Secretary of State was prevented, by collateral estoppel, from using the results of the breath-analysis test to support the zero-tolerance suspension of Gumma's driver's license. Nevertheless, for the reasons that follow, we affirm the appellate court's judgment.

## BACKGROUND

On September 22, 2000, Barrington police officer Scott Basel stopped a Ford Explorer, which was being driven by 20-year-old Ryan Gumma. According to the zero-tolerance sworn report[1] prepared by Officer Basel, the stop took place after Officer Basel witnessed Gumma drive over a curb and fail to stop at two stop signs. Officer Basel also indicated in his report that he "noticed an odor of alcoholic beverage as Gumma spoke" and that Gumma "did poorly on field sobriety tests." Gumma was

[1]A "zero tolerance sworn report" is a form used by law enforcement agencies to report zero tolerance violations to the Secretary of State. Information is provided on the form by the arresting officer, indicating that the prerequisites for a zero-tolerance summary suspension have been met.

arrested and taken to the Barrington police station, where he submitted to a breath-analysis test. A "test strip" generated by the breath-analyzing instrument indicated that Gumma took a breath-analysis test at the Barrington police station at 1:03 a.m. on September 22, 2000, and that his alcohol concentration registered 0.099.[2] Gumma was ticketed for consumption of alcohol by a minor (complaint number LO—937—576) and for disobeying a stop sign (complaint number Y9—128—143), in violation of Village of Barrington ordinances. Gumma was also given notice that his driving privileges would be summarily suspended pursuant to the zero-tolerance law, section 11—501.8 of the Vehicle Code.[3]

On November 9, 2000, Gumma filed a motion in the circuit court of Cook County, Municipal Department, Third District (hereafter municipal court), entitled "Motion for Production for Discovery Concerning Purported Breath Analysis Pursuant to 625 ILCS 5/11—501.8(b)(iv) (2000)."[4] In the motion, Gumma sought information concerning the police department's compliance with Illinois Department of Public Health rules and regulations.[5] In particular, Gumma sought production of the logbook(s) for the breath-analysis instrument used by

---

[2]Section 11—501.8(b)(v) provides: "Alcohol concentration means grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." 625 ILCS 5/11—501.8(b)(v) (West 1998).

[3]The sworn report indicates that notice was sent to Gumma in the mail. Subsequently, the Secretary of State issued an "Order of Zero Tolerance Suspension," informing Gumma that his driver's license and driving privileges would be suspended for a three-month period beginning November 11, 2000.

[4]Section 11—501.8(b)(iv) provides: "Upon a request of the person who submits to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to the person or that person's attorney." 625 ILCS 5/11—501.8(b)(iv) (West 1998).

[5]Section 11—501.8(b)(i) of the zero-tolerance law provides:

the Barrington police department to test his breath, which, pursuant to section 510.100 of the Public Health Code, the Barrington police department was required to maintain. Gumma requested the logbook entries for the previous 135 days, as well as any and all records or documents containing information concerning the instrument's usage, repair, maintenance, and certification, for the 45-day period encompassing the time that Gumma's breath test was administered.[6]

In response to the motion, the Village of Barrington provided Gumma with a copy of the "test strip" and a copy of Officer Basel's breath-analyzer operator's license. No logbook or other documentation concerning the instrument's certification for the 45-day period encompassing September 22, 2000, was produced.

On December 8, 2000, Gumma appeared in municipal court with regard to the two ordinance violation complaints. The court dismissed the two complaints and issued the following order:

"The Village of Barrington failed to comply with 77 Ill. Administrative Code, Section 510.100. The arresting officer failed to keep appropriate records and, therefore, as a matter of law, the blood-alcohol concentration is inadmissible against the Defendant in this or any other proceeding

---

"Chemical analysis of the person's blood, urine, breath, or other bodily substance, *to be considered valid under the provisions of this Section,* shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police \*\*\* ." (Emphasis added.) 625 ILCS 5/11—501.8(b)(i) (West 1998).

[6]At the time of Gumma's arrest, section 510.100(a) of the Public Health Code (77 Ill. Adm. Code § 510.100 (1998)) regulated the use of breath-analysis instruments. It provided: "To determine accuracy of instruments, an inspector shall perform two analyses on a certified controlled reference sample at least once a month at intervals not to exceed 45 days. The inspector shall record test results of his certification in the instrument logbook."

against the Defendant, including the summary suspension before the Secretary of State."

Thereafter, on June 19, 2001, Gumma filed a petition seeking rescission of his zero-tolerance suspension, as permitted by section 11—501.8(e) of the Code (625 ILCS 5/11—501.8(e) (West 1998)).[7] An administrative hearing took place before the Secretary of State on August 29, 2001. Gumma challenged his zero-tolerance suspension on the grounds that he had submitted to testing, but that the testing "did not indicate a blood alcohol level greater than 0.00." See 625 ILCS 5/11—501.8(e)(5) (West 1998). More specifically, Gumma claimed that his breath-analysis test was invalid because the Barrington police department failed to comply with Department of Health rules and regulation and, thus, the breath-analysis test results were inadmissible.

At the administrative hearing, the Secretary of State presented the following exhibits: a copy of the zero-tolerance sworn report; a copy of Officer Basel's breath-analyzer operator's license; a copy of Gumma's breath-analysis "test strip"; and copies of the complaints showing that Gumma had been ticketed for consumption of alcohol by a minor and for disobeying stop signs, in violation of Village of Barrington ordinances. In addition, the Secretary of State submitted a document dated August 24, 2001, entitled "Sworn Statement of Breath Test Operator." This document was a preprinted form with blank spaces where information had been filled in. In this document "S. Basel" averred that, on "9/22/00," he administered a breath-analysis test to "Gumma, Ryan D," using the "INTOX EC/IR" instrument, serial number "04128," and that the results of the breath-analysis test

---

[7]Gumma's petition was filed well after the three-month suspension of his license had terminated. There is no explanation in the record for the delay, but no issue has been raised as to the timeliness of the petition.

was a blood-alcohol concentration reading of ".099." He further averred in paragraph 5:

"This instrument was operating correctly when I administered this test, and had most recently been tested and certified accurate by M. Rose I.S.P. on 7/13/01, pursuant to standards promulgated by the Illinois Department of Public Health."

And in paragraph 8, he averred:

"I made a written record of the above test in the log book maintained for the instrument in question. A copy of that written record is attached hereto as Addendum #3."

However, beneath paragraph 8 was written "UNABLE TO LOCATE RECORD" and no Addendum #3 was attached to the form.

Both the Secretary of State and Gumma submitted to the hearing officer copies of Gumma's motion for discovery, which, as noted above, Gumma filed in the municipal court proceedings, as well as copies of the December 8, 2000, order, which the municipal court issued upon the dismissal of the ordinance violation complaints.

Gumma was the only witness to testify at the administrative hearing. He testified that on September 22, 2000, when he was 20 years old, he was arrested and taken to the Barrington police station by Barrington police officer Scott Basel after he made a "rolling stop" at a stop sign. Gumma denied that he had been drinking any alcoholic beverages that night and suggested that any odor of alcohol that might have been detected by the officer could have come from his passenger, Matt, who, Gumma admitted, had been intoxicated that evening. Gumma also testified that he was not asked to perform, and did not perform, any field sobriety tests prior to being arrested. Finally, Gumma admitted that he took a breath-analysis test at the Barrington police station which gave a reading of 0.09. Gumma stated, however, that he had no idea how the machine worked and could

not explain why the machine had given that reading when he had not been drinking.

In closing argument, Gumma's counsel argued that the Barrington police department failed to comply with Department of Public Health rules and regulations concerning the certification and maintenance of the breath-analysis instrument used to test Gumma's breath. Accordingly, counsel argued that the breath test was invalid and the results inadmissible. The Secretary of State offered no argument in response.

Subsequently, the hearing officer issued a written report containing his findings and recommendation. In this report, the hearing officer acknowledged that the breath-analysis test had been "thrown out" in municipal court because the arresting agency had not produced the requested "records in regard to the authenticity of said reading." Nonetheless, the hearing officer, finding that the Secretary of State was not bound by the municipal court's ruling, rejected Gumma's argument that the test results were inadmissible. Relying on the breath-analysis tape and the officer's sworn report, the hearing officer found that Gumma submitted to testing which showed that Gumma had a blood-alcohol level greater than 0.00. Thus, the hearing officer found Gumma's request for rescission to be without merit and recommended that the petition be denied. The Secretary of State adopted the findings and recommendation of the hearing officer and, in an order dated October 16, 2001, denied Gumma's petition for rescission of the zero-tolerance suspension of his driver's license.

Gumma filed a complaint in the circuit court of Cook County seeking administrative review of the Secretary of State's decision. On August 23, 2002, the circuit court issued a memorandum opinion and order finding the Secretary of State's denial of Gumma's petition for rescission against the manifest weight of the evidence. The

circuit court held that Gumma had called into question the validity of the breath-analysis test and that the sworn statement of the breath-test operator "affirmatively stated that the log book for the subject machine could not be located." Thus, the court held that the State had failed to "show that the machine had been tested as required by the Department of Public Health regulations and that those inspections were current at the time the breath test was administered to" Gumma. For this reason, the court ruled that the test results were inadmissible to support the summary suspension. In addition, the circuit court held that the officer's sworn report was "devoid of factual content" and, for that reason, insufficient evidence that Gumma had consumed alcohol. The circuit court reversed the Secretary of State's decision to deny Gumma's petition.

The Secretary of State appealed the circuit court decision, and the appellate court affirmed, but on different grounds. 345 Ill. App. 3d 610. The appellate court held that the breath-analysis test results were inadmissible because they were barred by collateral estoppel. The appellate court stated:

> "The circuit court's [December 8, 2000] order barring the use of evidence concerning plaintiff's blood-alcohol concentration in any proceeding including any statutory summary suspension proceeding before the Secretary of State was tantamount to an exclusion based on the doctrine of collateral estoppel." 345 Ill. App. 3d at 616.

The Secretary of State filed a petition for leave to appeal, which this court granted. 177 Ill. 2d R. 315(a).

## ANALYSIS

The Secretary of State raises two issues in his appeal: (1) whether the appellate court erred when it held that the Secretary of State was collaterally estopped from using the results of the breath-analysis test to support the zero-tolerance suspension of Gumma's driver's license, and (2) whether the Secretary of State's decision

to deny Gumma's petition to rescind the zero-tolerance suspension of his driver's license was against the manifest weight of the evidence. Before addressing these issues, we examine the zero-tolerance law under which Ryan Gumma's driver's license was suspended.

The zero-tolerance statute, which came into effect on January 1, 1995, is set forth in section 11—501.8 of the Vehicle Code (625 ILCS 5/11—501.8 (West 1998)). The statute provides in subsection (a) that, if a person under the age of 21, while operating a motor vehicle on the public roads of this state, is arrested for *any* traffic violation and the arresting officer "has probable cause to believe that the driver has consumed any amount of an alcoholic beverage," the driver "shall be deemed to have given consent to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol content of the person's blood." 625 ILCS 5/11—501.8(a) (West 1998). When the conditions in subsection (a) are met and the driver is asked to submit to testing, the driver must be warned that his driving privileges may be suspended if he refuses to submit to the testing or if he submits to the test and the test reveals an alcohol concentration greater that 0.00. 625 ILCS 5/11—501.8(c) (West 1998). After being warned, if the driver refuses to submit to testing or if he submits to testing and the testing establishes an alcohol concentration greater than 0.00, the officer "shall immediately submit a sworn report to the Secretary of State" certifying whether the driver submitted to testing or refused. 625 ILCS 5/11—501.8(d) (West 1998). The Secretary of State, upon receipt of the officer's sworn report, "shall enter the driver's license sanction on the individual's driving record" and suspension of the person's driving privileges automatically goes into effect "on the 46th day following the date notice of the sanction was given to the person." 625 ILCS 5/11—501.8(d) (West 1998).

Although the zero-tolerance law is similar in some respects to the summary suspension provision for driving while intoxicated (DUI) (625 ILCS 5/11—501.1 (West 1998)), it is separate and distinct. See *People v. McKenna*, 328 Ill. App. 3d 396, 402 (2002) (the implied-consent law and the zero-tolerance law are independent statutory schemes with distinct hearing provisions involving different issues raised in different forums). Unlike a DUI summary suspension, which may be imposed when a driver is arrested for driving while under the influence of alcohol or other intoxicating substances (625 ILCS 5/11—501 (West 1998)), the zero-tolerance summary suspension may be imposed if a driver under the age of 21 has been arrested for *any* traffic violation, provided the arresting officer has probable cause to believe that the driver has consumed some amount of alcohol *and* the driver refuses testing or submits to testing which reveals a blood-alcohol concentration greater than 0.00. As we noted in *Arvia v. Madigan*, 209 Ill. 2d 520, 539 (2004), a zero-tolerance summary suspension provides "youthful drivers an incentive—not found in the DUI law—to refrain from consuming any amount of alcohol."

The forum in which zero-tolerance suspensions may be challenged also differs from DUI summary suspensions. Pursuant to section 2—118.1(b) of the Illinois Vehicle Code, a driver may petition for rescission of a DUI statutory summary suspension by making "a written request for a judicial hearing in the circuit court of venue." 625 ILCS 5/2—118.1(b) (West 1998). A zero-tolerance license suspension, however, must be contested before the Secretary of State in an administrative hearing, which is limited in scope to seven issues: (1) whether the police officer had probable cause to believe that the person was driving or in actual physical control of a motor vehicle and whether the police officer had reason to

believe that the person was in violation of any provision of the Illinois Vehicle Code or a similar provision of a local ordinance, (2) whether the person was issued a Uniform Traffic Ticket, (3) whether the police officer had probable cause to believe that the driver had consumed any amount of an alcoholic beverage, (4) whether the person, after receiving the required warnings, refused to submit to or complete the test or tests to determine the person's alcohol concentration, (5) whether the person, after receiving the required warnings, submitted to and completed the test or tests that determined an alcohol concentration of more than 0.00, (6) whether the test result of an alcohol concentration of more than 0.00 was based upon the person's consumption of alcohol in the performance of a religious service or ceremony, or (7) whether the test result of an alcohol concentration of more than 0.00 was based upon the person's consumption of alcohol through ingestion of the prescribed or recommended dosage of medicine. 625 ILCS 5/11—501.8(e) (West 1998).

Although the forum in which the challenge is brought differs, a driver seeking relief from a zero-tolerance summary suspension, like a petitioner under the DUI law, bears the initial burden of proof. 92 Ill. Adm. Code § 1001.620 (1998) (zero-tolerance petitioner carries the burden of proof). See also *Arvia*, 209 Ill. 2d at 542 (in both zero-tolerance and DUI suspension hearings, person challenging the suspension bears the initial burden of proof). Thus, when contesting a zero-tolerance suspension, the driver must present a *prima facie* case for rescission, and only after this burden has been met will the Secretary of State be required to come forth with additional evidence to support the suspension. See *People v. Orth*, 124 Ill. 2d 326 (1988) (in a DUI suspension hearing, State did not have to lay a foundation for the admission of the breath-test results until the driver made a

*prima facie* case for rescission). Ordinarily, the arresting officer's sworn report, which carries a presumption of credibility (see *People v. Badoud*, 155 Ill. App. 3d 912, 917 (1987)), may be relied upon as evidence that the driver submitted to testing which accurately revealed the driver's blood-alcohol concentration, or that he refused. 625 ILCS 5/11—501.8(e) (West 1998). See *Kalita v. White*, 342 Ill. App. 3d 796, 803-04 (2003) (where motorist did not subpoena police officer, hearing officer was entitled to rely on the arresting officer's official reports to find that motorist refused to submit to testing). However, if the driver successfully presents a *prima facie* case attacking the validity of the test, the Secretary of State must grant the request for rescission unless he can lay a proper foundation for the admission of the test results into evidence. See *Orth*, 124 Ill. 2d at 340.

The decision of the Secretary of State to grant or deny relief is subject to judicial review in accord with "the provisions of the Administrative Review Law [735 ILCS 5/3—101 *et seq.*]." See 625 ILCS 5/11—501.8(h) (West 1998). The Administrative Review Law mandates that the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3—110 (West 1998). This means that an administrative agency's findings of fact should not be disturbed on review unless they are against the manifest weight of the evidence. *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273 (2004). Thus, when the decision of the Secretary of State to deny a petition to rescind a zero-tolerance license suspension is based on its factual findings and conclusions, we review the determination under the manifest weight standard. See *Arvia*, 209 Ill. 2d at 542.

*Collateral Estoppel*

As noted earlier, Gumma's zero-tolerance suspension emmed from his September 22, 2000, arrest, when he

was ticketed for failure to stop at stop signs and for consumption of alcohol by a minor, in violation of Barrington village ordinances. The Village of Barrington prosecuted Gumma in municipal court on these ordinance violation charges and the court found that the Barrington police department failed to comply with Department of Public Health rules and regulations. The court entered an order holding that "as a matter of law, the blood-alcohol concentration is inadmissible against the Defendant [Gumma] in this or any other proceeding against the Defendant, including the summary suspension before the Secretary of State." This order was admitted into evidence at the administrative hearing when Gumma contested his zero-tolerance suspension. The hearing officer held, however, that the municipal court's ruling was not binding on the Secretary of State. The Secretary of State adopted this position and rejected Gumma's petition for rescission, relying on the breath-analysis test results to support Gumma's zero-tolerance summary suspension.

The appellate court, when reviewing the Secretary of State's decision to deny Gumma's petition for rescission, found it to be against the manifest weight of the evidence. The appellate court concluded that the municipal court's order *was* binding on the Secretary of State. Acknowledging that no court had yet considered the issue before it, the appellate court looked to decisions where the issue had been whether the doctrine of collateral estoppel could apply to preclude the State from litigating the validity of a Breathalyzer test in a DUI trial after the results of the Breathalyzer had been found inadmissible at a summary suspension hearing. See *People v. Moore*, 138 Ill. 2d 162 (1990); *People v. Hackman*, 209 Ill. App. 3d 779 (1991); *People v. Flynn*, 197 Ill. App. 3d 13 (1990). In these cases, it was held that collateral estoppel did *not* apply because of the nature of the summary proceedings. Distinguish-

ing these cases on the facts, the appellate court held that here, where the municipal court proceeding occurred first in time, collateral estoppel *was* applicable to prevent the Secretary of State from using the breath-analysis test results to support Gumma's zero-tolerance summary suspension. Thus, the appellate court held that the breath-analysis test results should not have been admitted and, therefore, there was "no basis to uphold the suspension." 345 Ill. App. 3d at 619.

We disagree with the appellate court's ruling on the issue of first impression. Collateral estoppel is an equitable doctrine and its application is governed by certain general principles. This court has repeatedly held that the minimum threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001); *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387 (2000); *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997).

In the case at bar, the parties to the municipal proceedings were Gumma and the Village of Barrington. The Secretary of State—the party against whom estoppel is now being asserted—was neither a party nor in privity with a party in the prior municipal court proceeding. For this reason, the municipal court's ruling can have no preclusive effect on the Secretary of State in the zero-tolerance proceedings.

The appellate court, when ruling that collateral estoppel applied, held:

"At the underage consumption of alcohol trial, the State was represented by the State's Attorney's office, and at the statutory summary suspension hearing, the State was

represented by the Secretary. Consequently, we find that all of the elements necessary for the application of collateral estoppel existed at the time of the statutory summary suspension hearing and that the Secretary was bound by the determination of the circuit court with respect to the results of the Breathalyzer test and was thereby precluded by that determination from using the results of the Breathalyzer test." 345 Ill. App. 3d at 618.

The appellate court, however, was factually incorrect. The State did not prosecute the ordinance violation complaints against Gumma. The Village of Barrington, represented by its own village attorney, prosecuted the matter. Accordingly, we agree with the Secretary of State that the appellate court erred by applying collateral estoppel in this matter. For this reason, we find that the appellate court erred when it held the Secretary of State was barred by collateral estoppel from using the breath-analysis test results to support the zero-tolerance suspension of Gumma's driver's license.[8]

---

[8]We note that the zero-tolerance statute provides in subsection (f) that "the results of any chemical testing performed in accordance with subsection (a) of this Section *are not admissible in any civil or criminal proceeding*, except that the results may be considered at a[n administrative review] hearing held under Section 2—118 of this Code." (Emphasis added.) 625 ILCS 5/11—501.8(f) (West 2000); see also *Arvia*, 209 Ill. 2d at 539-40 (unlike the DUI law, the zero-tolerance law prohibits evidence of the driver's blood-alcohol concentration to be used in any other civil or criminal proceeding). We presume that, in the case at bar, Gumma did not invoke this provision at the municipal court proceedings because, although the municipal court held the test results inadmissible, it did so because it found the Barrington police department failed to comply with Department regulations—the ruling at issue here. The parties have not discussed section 11—501.8(f) in their briefs before this court. Therefore, we do not consider what impact, if any, this provision might have on the application of the equitable doctrine of collateral estoppel in similar circumstances.

*Whether the Secretary of State's Denial of Gumma's Petition for Recission Was Against the Manifest Weight of the Evidence*

Although we have determined that the Secretary of State was not prevented *by collateral estoppel* from admitting the breath-analysis test results at the summary suspension hearing, we must now decide whether the breath-analysis test results were inadmissible for other reasons, as Gumma asserts, and, if so, whether the Secretary of State's denial of Gumma's petition for rescission was against the manifest weight of the evidence.

Gumma petitioned for rescission of his driver's license suspension claiming, pursuant to section 11—501.8(e), that he had submitted to testing, but that the testing "did not indicate a blood alcohol level greater than 0.00." See 625 ILCS 5/11—501.8(e)(5) (West 1998). At the administrative hearing, then, Gumma had the initial burden of presenting a *prima facie* case for rescission. See *Arvia*, 209 Ill. 2d at 542 (in both zero-tolerance and DUI suspension hearings, person challenging the suspension bears the initial burden of proof). Because it is undisputed that Gumma had submitted to a breath-analysis test which registered a blood-alcohol level greater than 0.00, Gumma had the burden of making a *prima facie* showing that the breath-analysis test administered to him at the Barrington police station on September 22, 2000, was invalid and, therefore, inadmissible to establish his blood-alcohol concentration. The initial question before us, then, is whether Gumma met this burden.

The zero-tolerance statute provides in section 11—501.8(b)(i) that "[c]hemical analysis of the person's blood, urine, breath, or other bodily substance, *to be considered valid under the provisions of this Section*, shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police by an

individual possessing a valid permit issued by that Department for this purpose."[9] (Emphasis added.) 625 ILCS 5/11—501.8(b)(i) (West 2000). In *People v. Emrich*, 113 Ill. 2d 343 (1986), this court interpreted language in section 11—501.2(a) which is identical to the above-quoted language in section 11—501.8(b)(i) and stated that the statute "provides that the standards have to be complied with for a blood analysis 'to be considered valid.' The obvious corollary is that the analysis will not be considered valid, and will be inadmissible, absent such compliance. Read as a whole, *** compliance with the standards is a prerequisite to admissibility on a DUI charge." *Emrich*, 113 Ill. 2d at 350.

In *People v. Hamilton*, 118 Ill. 2d 153, 160 (1987), we extended our holding in *Emrich* to hold that "compliance with section 11—501.2 is mandatory for summary suspension purposes, [and] noncompliance will render test results invalid and inadmissible." Although *Hamilton* dealt with a challenge to a statutory summary suspension imposed under section 11—501.1, we find that, because the language in section 11—501.8(b)(i) is identical to the language in section 11—501.2, admissibility of blood-alcohol concentration evidence at a zero-tolerance suspension hearing is also contingent upon its validity. Thus, a petitioner in a zero-tolerance rescission hearing may present a *prima facie* case for rescission by

---

[9]This section was amended, effective January 1, 2001, by Public Act 91—828. The amendment deleted "Department of Public Health in consultation with" in this sentence. The current version of the statute gives the Department of State Police, rather than the Department of Public Health, the authority to promulgate testing standards, to "approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses," as well as the authority "to issue permits that shall be subject to termination or revocation at the direction of that Department, and to certify the accuracy of breath testing equipment."

presenting evidence that the test is invalid due to a failure to comply with Department of Health rules and regulations.

In the case at bar, Gumma established at the administrative hearing that, shortly after submitting to a breath-analysis test at the Barrington police station, he requested the logbook for the breath-analysis instrument used to test his breath, as well as any other documents which would establish that the Barrington police department complied with Department of Health rules concerning the certification of breath-analysis equipment. The police department did not produce this information. Although Gumma did not subpoena these documents or Officer Basel at the administrative hearing, Officer Basel's "Sworn Statement of Breath Test Operator" affirmatively established that the Barrington police department was "unable to locate [the] record."

By establishing that there was no record that the instrument used to test his breath had been properly maintained, tested and certified accurate, as required by Department of Public Health rules and regulations, Gumma made a *prima facie* showing that the breath-test results were invalid. Because Gumma presented a *prima facie* case, the burden shifted to the Secretary of State to produce evidence establishing the validity of the breath test. Importantly, the admissibility of the breath-test results, as recorded in the officer's sworn report and on the "test strip," became contingent upon the Secretary of State's ability to lay a proper foundation, by establishing the validity of the breath test. See *Orth*, 124 Ill. 2d at 340 (once motorist made a *prima facie* case, the State can only avoid rescission by moving for the admission of the test into evidence and laying the required foundation). Thus, in the case at bar, the Secretary of State could avoid rescission only by producing evidence that the breath-analysis instrument had been properly

maintained, tested and certified accurate in accordance with the Department of Public Health rules and regulations.

Here, however, the only evidence submitted by the Secretary of State in this regard was the sworn statement by Officer Basel dated August 24, 2001. In this statement Officer Basel attested that the instrument had been "tested and certified accurate on 7/13/01." This date, however, was long after any 45-day period which would have included September 22, 2000, the date when Gumma's breath test was administered. Thus, the Secretary of State produced no evidence that the instrument used to test Gumma's breath was functioning properly on September 22, 2000. A proper foundation for the admission of the breath-test results was not made. Therefore, the breath-test results were inadmissible and could not be relied upon to support the zero-tolerance summary suspension.

The Secretary of State argues that, even though Gumma was able to show that the Barrington police department violated the Department of Public Health rules, he did not make a *prima facie* showing that the breath-test results were unreliable "in light of other evidence that he consumed some amount of alcohol." The Secretary of State contends that it is immaterial that Gumma was able to show that the breath-analysis instrument may not have been accurate because "the precision of the Breathalyzer result is of far less consequence in a zero tolerance proceeding" (as opposed to a DUI statutory proceeding) since, in a zero-tolerance proceeding, summary suspension may be based on the consumption of *any* amount of alcohol. This argument misses the point.

It is clear from the language of the zero-tolerance statute that evidence of a driver's submission to *testing* which discloses an alcohol concentration greater than 0.00, or evidence that he refused to submit to testing, is

a necessary prerequisite for the imposition of a summary suspension pursuant to this provision. 625 ILCS 5/11—501.8(d) (West 1998). In other words, when a driver under the age of 21 is arrested for committing a traffic violation, summary suspension may not be imposed pursuant to section 11—501.8 of the Code, even when probable cause exists to believe that the driver has consumed some amount of alcohol, *unless* there is evidence that the driver submitted to *testing*, or that the driver refused to submit to testing. The officer's observations, which suggest that the driver has consumed some amount of alcohol, while important for the establishment of probable cause, are insufficient to support a summary suspension pursuant to the zero-tolerance provision.

In the case at bar, Gumma sought rescission of his zero-tolerance summary suspension and, at the administrative hearing, made a *prima facie* showing that the breath-analysis test he took was invalid. Therefore, the test results were inadmissible unless the Secretary of State was able to lay a proper foundation for the admission of the breath-test results. The Secretary of State failed to do so. The Secretary of State could not show that the instrument used to test Gumma's breath had been maintained in compliance with Department of Public Health rules and regulatio... . For this reason, the test results were not admissible ...nd the Secretary of State had no valid evidence that ( ...nma "did submit to and complete the test or tests that ...ermined an alcohol concentration of more than 0.0... 625 ILCS 5/11—501.8(e)(5) (West 1998). Accord... y, Gumma's zero-tolerance summary suspension ...ld have been rescinded. The Secretary of State ...enial of Gumma's petition was against the manifest ... ;ht of the evidence.

## CONCLUSIC...

For the reasons stated, we affi ...ie appellate court's judgment.

*Affirmed.*