# Illinois Official Reports

## Appellate Court

---

### *Hernandez Camberos v. Palacios*, 2021 IL App (2d) 210078

---

| | |
|---|---|
| Appellate Court Caption | LETICIA A. HERNANDEZ CAMBEROS, Petitioner-Appellee, v. WILLIAM PALACIOS, Respondent-Appellant. |
| District & No. | Second District No. 2-21-0078 |
| Filed | July 12, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 16-F-776; the Hon. Steven L. Nordquist, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Andrew J. Vella, of Vella & Lund, P.C., of Rockford, for appellant. |
| | Jesse P. Hodierne and Rose A. Willette, of Prairie State Legal Services, Inc., of Rockford, for appellee. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices Jorgensen and Brennan concurred in the judgment and opinion. |

**OPINION**

¶ 1    This case involves a child custody dispute between parties who live in different states. The original custody determination was made in Washington, where the petitioner, Leticia Hernandez A. Camberos, and the child, A.R.H., lived. After Leticia moved to Utah, the Washington court ceded jurisdiction to Utah. The respondent, William Palacios, filed in the circuit court of Winnebago County (the Winnebago court) a petition to modify child custody. The Winnebago court declined jurisdiction and dismissed William's petition. William appeals from that order. We affirm.

¶ 2                                I. BACKGROUND

¶ 3    On November 23, 2015, Leticia gave birth to A.R.H. in Washington. On September 2, 2016, the State of Washington filed a "Uniform Support Petition" on behalf of A.R.H., seeking to establish paternity and child support. Subsequent genetic testing revealed that William was A.R.H.'s father.

¶ 4    On January 6, 2017, William filed in the Winnebago court a petition seeking to establish temporary and permanent parental responsibilities for A.R.H. On February 15, 2017, the Winnebago court dismissed his petition due to lack of jurisdiction.

¶ 5    On October 22, 2018, the Washington court entered a parenting plan that, among other things, allocated decision making responsibilities regarding A.R.H. jointly among the parties. The parenting plan granted a certain amount of parenting time to each party. William was granted the months of February, April, June, August, and October, with November in even years and December in odd years. Leticia was granted the remaining days of the year. In total, Leticia would have parenting time for about 197 days per year and William would have about 168 days per year. The parenting time schedule was to be revisited when A.R.H. enrolled in kindergarten. The plan noted that "Washington law generally refers to parenting time and decision-making, rather than custody." Since Leticia had the greater share of parenting time, she was the "custodian" of A.R.H. "for purpose of all state and federal statutes which require a designation [or] determination of custody." Similarly, since January 1, 2016, Illinois has substituted the terms "parenting time" and "parental responsibility" for the terms "visitation" and "custody." See 750 ILCS 5/801(e) (West 2018) (noting shift in terminology); 750 ILCS 5/606.10 (West 2018) ("Solely for the purposes of all State and federal statutes that require a designation or determination of custody or a custodian, a parenting plan shall designate the parent who is allocated the majority of parenting time.").

¶ 6    On May 10, 2019, William filed with the Washington court a petition to modify the parenting plan. Before that petition was resolved, on August 1, 2019, William filed with the Winnebago court a petition seeking to modify the child custody determination entered in Washington. In that petition, William requested additional parenting time and argued that Illinois had jurisdiction over his petition. The Winnebago court then communicated with the Washington court regarding the case.

¶ 7    On September 24, 2019, the Winnebago court dismissed William's petition to modify child custody. The Winnebago court explained that Washington, not Illinois, was the child's home state and therefore the Washington court should resolve the parties' dispute regarding parenting issues.

¶ 8        On October 31, 2019, following a hearing in which William participated, the Washington court dismissed William's petition to modify the parenting plan. The Washington court also found that, as Leticia and A.R.H. had moved to Utah, Utah was now A.R.H.'s home state. The Washington court determined that, as none of the parties lived in Washington, it no longer had a basis to justify its continued jurisdiction over the matter. Therefore, the Washington court declined jurisdiction in order to allow a Utah court to resolve the parties' parenting issues. William did not appeal from this order.

¶ 9        In early 2020, William and Leticia continued to adhere to the Washington court's 2018 parenting plan, alternating months of parenting time with A.R.H. On February 14, 2020, William took custody of A.R.H. When Leticia came to Illinois to retrieve A.R.H. in March 2020, however, William refused to surrender her, citing the lockdowns in place at the time due to COVID-19. Leticia then spent the next several months unsuccessfully trying to regain custody of A.R.H., as William had stopped communicating with her.

¶ 10        On August 19, 2020, William filed in the Winnebago court a petition to modify child custody. William asserted that, because A.R.H. had resided with him in Illinois for the last six months, the parenting plan should be modified so as to grant him complete parenting time with A.R.H. and to allow him to enroll her in school.

¶ 11        On August 25, 2020, Leticia filed in Utah emergency motions seeking a temporary restraining order (TRO), a preliminary injunction, and the immediate enforcement of the child custody orders so as to require William to return A.R.H. to her. On September 22, 2020, the Utah court enrolled and registered the Washington court parenting plan.

¶ 12        On December 14, 2020, the Utah court issued a TRO requiring William to return A.R.H. to Leticia. On December 27, 2020, William surrendered A.R.H. to Leticia.

¶ 13        On December 29, 2020, Leticia filed in the Winnebago court a motion to dismiss William's petition to modify child custody, pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)). On January 12, 2021, the Winnebago court discussed with the Utah court the appropriate forum for the parties' issues regarding custody of A.R.H. On January 20, 2021, the Winnebago court dismissed William's petition to modify custody. The Winnebago court explained that it was declining jurisdiction because it agreed with the Utah court that Utah was the child's home state and that was where the parties' disputes regarding A.R.H. should be resolved. William thereafter filed a timely notice of appeal from that order.

¶ 14                                II. ANALYSIS

¶ 15        On appeal, William argues that the trial court erred in dismissing on jurisdictional grounds his petition to modify child custody. He claims that, once Leticia moved out of Washington, Washington lost any jurisdiction to consider the parties' custody dispute. He further claims that Utah never gained jurisdiction under section 201 of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) (750 ILCS 36/201 (West 2018)) because the child never resided six consecutive months there. Because neither Washington nor Utah had jurisdiction, William insists that Illinois was the proper forum to bring his action and, thus, the Winnebago court did have jurisdiction to consider his petition to modify custody.

¶ 16        At the outset, we note that the UCCJEA became effective in Illinois on January 1, 2004, and "was promulgated to end custody jurisdictional disputes between states, to promote

cooperation between states in determining custody issues, and to enhance the ability of states to enforce custody orders expeditiously." *In re Marriage of Milne*, 2018 IL App (2d) 180091, ¶ 27. Once a state makes an initial child custody determination, the statute gives the state exclusive continuing jurisdiction. *Id.*; see 750 ILCS 36/202(a) (West 2018). "As used in the [UCCJEA], *** 'jurisdiction' must be understood as simply a procedural limit on when the court may hear initial custody matters, not a precondition to the exercise of the court's inherent authority," which "emanates solely from article VI, section 9, of our constitution (Ill. Const. 1970, art. VI, § 9)." *McCormick v. Robertson*, 2015 IL 118230, ¶ 27.

¶ 17        Section 201(a) of the UCCJEA provides that a state has jurisdiction to make an initial custody determination if:

> "(1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
>
> (2) a court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under Section 207 or 208, and:
>
>> (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
>>
>> (B) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships." 750 ILCS 36/201(a) (West 2018).

The UCCJEA defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. *** A period of temporary absence of any of the mentioned persons is part of the period." 750 ILCS 36/102(7) (West 2018).

¶ 18        An Illinois court may modify another state's child custody determination only if the requirements of section 201(a)(1) or section 201(a)(2) are met, and:

> "(1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under Section 202 or that a court of this State would be a more convenient forum under Section 207; or
>
> (2) a court of this State or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state." 750 ILCS 36/203 (West 2018).

¶ 19        Here, for the first years of A.R.H.'s life, Washington was her home state pursuant to section 201 of the UCCJEA. This changed when Leticia and A.R.H. moved to Utah. In 2019, following a hearing, the Washington court ceded custody to Utah, finding that "Utah is the home state of the child" and "Utah has jurisdiction of the parties and the subject matter." William had the opportunity to appeal the Washington court's decision. His failure to do so prevents him from now arguing in Illinois that Utah is not the home state.

¶ 20        Under the doctrine of collateral estoppel, Illinois must honor the preclusive effect of another state's judgment on a matter. *Dancor Construction, Inc. v. FXR Construction, Inc.*, 2016 IL App (2d) 150839, ¶ 63; U.S. Const., art. IV, § 1. In order for collateral estoppel to apply, three elements must be met:

"(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White*, 216 Ill. 2d 23, 38 (2005).

Furthermore, Illinois courts examine the foreign state's law on *res judicata* or collateral estoppel to ascertain the effect of that state's judgment. *Dancor*, 2016 IL App (2d) 150849, ¶ 63. In Washington, *res judicata* and collateral estoppel are somewhat similar, but not identical. *Pederson v. Potter*, 11 P.3d 833, 836 (Wash. Ct. App. 2000). Collateral estoppel requires that the parties "have a full and fair opportunity to present their case" before relitigation of an issue is prevented. *Id. Res judicata*, meanwhile, "prohibits the relitigation of claims and issues that were litigated, or might have been litigated, in a prior action." *Id.* at 835.

¶ 21    Here, William had already filed a petition to modify child custody in Washington by August 1, 2019, when he filed his same petition with the Winnebago court. The Washington court conducted a hearing with the participation of William, his counsel, and a Utah judge. Because Leticia and A.R.H. had moved to Utah, the Washington court's subsequent order found that Utah was A.R.H.'s home state and therefore had jurisdiction over the case. The final order dismissed William's petition in order to allow the case to continue in Utah. The petition to modify child custody William filed in the Winnebago court less than a year later, on August 19, 2020, is essentially identical to the one he filed in Washington. See *Gumma*, 216 Ill. 2d at 38. The Washington court order constituted a final judgment on the merits, with William and his counsel privy to the adjudication because they were both present at and participants in the hearing on October 31, 2019. See *id.* William had a full and fair opportunity to present his case at the hearing, while also having the chance to appeal the Washington court's decision. See *Pederson*, 11 P.3d at 836. Therefore, Illinois must honor the Washington court's judgment that Utah is A.R.H.'s home state and thus the proper forum for the parties to continue any further litigation. See *Dancor*, 2016 IL App (2d) 150849, ¶ 63. For that reason, William is now collaterally estopped from arguing that Utah is not A.R.H.'s home state. See *id.*

¶ 22    As Utah is A.R.H.'s home state, the only other basis on which Illinois could make an initial custody determination is if A.R.H. lived six consecutive months in Illinois prior to William filing his custody petition. See 750 ILCS 36/102(7), 201(a) (West 2018). In determining whether a parent and child have reached the six-month threshold, this court will not apply a "strict physical-presence test" but will instead consider the "totality of the circumstances." *Milne*, 2018 IL App (2d) 180091, ¶¶ 31-33. To do otherwise would allow a parent to invoke this court's jurisdiction through unjustifiable or reprehensible conduct. See 750 ILCS 36/208(a) (West 2018) ("if a court of this State has jurisdiction under this Act because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction"); *In re Marriage of Thompson*, 96 Ill. 2d 67, 77 (1983) (explaining that the Uniform Child Custody Jurisdiction Act (Ill. Rev. Stat. 1979, ch. 40, ¶ 2101 *et seq.*) (the statute preceding the UCCJEA) was designed to prevent one from wrongfully taking physical custody of a child or similar "reprehensible conduct").

¶ 23    Here, the only reason that William had custody of A.R.H. for six consecutive months was because he refused to comply with court orders obligating him to return A.R.H. to Leticia. William's unjustifiable and reprehensible conduct was not a basis on which to invoke the Winnebago court's jurisdiction. See 750 ILCS 36/208(a) (West 2018); *Thompson*, 96 Ill. 2d at 77.

¶ 24 Furthermore, even if we were to overlook the reason why William had custody of A.R.H. for six consecutive months and determine that the Winnebago court could exercise jurisdiction under section 201(a) of the UCCJEA, we would nonetheless conclude that the Winnebago court did not err in declining jurisdiction to consider William's petition to modify custody. That is because an Illinois court can exercise jurisdiction to modify a custody determination only if the requirements of both sections 201(a) and 203 of the UCCJEA are met. See 750 ILCS 36/203 (West 2018). Section 203 would require the Utah court to determine that it no longer has continuing and exclusive jurisdiction (which it has not done) or for the Winnebago court to determine that neither Leticia nor A.R.H. has a connection to Utah. The Winnebago court made no such determination, as it expressly found that Utah was A.R.H.'s home state. As the requirements of section 203 were not met, the Winnebago court did not err in declining to exercise jurisdiction over the case. See generally *In re Marriage of Horgan*, 366 Ill. App. 3d 180, 185 (2006) ("[b]ecause a finding of inconvenient forum is the product of an exercise of the circuit court's discretion, it will be affirmed unless the reviewing court finds an abuse of discretion"). Accordingly, the Winnebago court properly dismissed William's petition to modify custody. See *Fleckles v. Diamond*, 2015 IL App (2d) 141229, ¶ 30 (our review of a trial court's ruling on a 2-619 motion to dismiss is *de novo*).

¶ 25 Finally, we reject William's argument that the Winnebago court erred in not keeping a sufficient record of its conversation with the Utah court on January 12, 2021, when those two courts discussed the proper forum for the proceedings. As William did not raise this issue before the Winnebago court, either during the hearing or in a motion to reconsider, it is forfeited. See *Dopp v. Village of Northbrook*, 257 Ill. App. 3d 820, 824 (1993); see also *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1022 (2007) (trial court can consider issues raised for the first time in a motion to reconsider where there is a reasonable explanation for why the additional issues were not raised earlier).

¶ 26                                          III. CONCLUSION

¶ 27 For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

¶ 28 Affirmed.