2026 IL App (2d) 250333-U
No. 2-25-0333
Order filed May 8, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

In re Marriage of FRANCISCO D. REYES, Petitioner-Appellant,

and

GHYSLAINE G. REYES, Respondent-Appellee.

Appeal from the Circuit Court of Kane County.

Honorable Kimberley M. DiGiovanni, Judge, Presiding.
No. 24-DC-181

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court erred in granting motion for involuntary dismissal of proceeding for dissolution of marriage on the basis that, during the relevant time frame, Illinois was not the home state of children for whom a custody determination was sought; a genuine issue as to a material fact precluded dismissal without an evidentiary hearing.

¶ 2    Petitioner, Francisco D. Reyes, appeals from an order of the circuit court of Kane County dismissing his amended petition for the dissolution of his marriage to respondent, Ghyslaine G. Reyes.  The court dismissed the amended petition pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2024)), on the basis that, because the petition sought a custody determination with respect to the parties' children, whose home state was

Mexico under the Uniform Child-Custody Jurisdiction and Enforcement Act (Act) (750 ILCS 36/101 *et seq.* (West 2024)), the action could not proceed in Illinois. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4      On April 3, 2024, Francisco filed his petition for dissolution of marriage. He alleged that the parties were married in 2010 and had two children together: A.L.R. (born on January 23, 2017) and E.A.M.R. (born on May 22, 2020). Francisco alleged that "the parties and their minor children have been residents of the State of Illinois for a continuous period in excess of six months prior to the filing of this Petition for Dissolution of Marriage, and Illinois is the home state of the parties' minor children, as that term is defined in the *** Act." (As will be discussed at greater length below, the Act provides that Illinois courts have "jurisdiction" to hear cases involving child custody if Illinois was the child's "home state"—the state where the child lived with a parent, or a person acting in that capacity, for at least six consecutive months, excluding periods of temporary absence—on the date the proceeding was commenced or within six months prior to that date.)

¶ 5      Ghyslaine entered her appearance on May 1, 2024, and subsequently moved to dismiss the petition under section 2-619 on the basis that divorce proceedings were pending in Mexico and that Durango, Mexico, was the children's home state. Before the motion was heard, Francisco filed an amended petition for dissolution, alleging, in pertinent part, that A.L.R. and E.A.M.R. "went to Mexico to learn Spanish and experience the Mexican culture" and that it was Francisco's understanding that they were to be in Mexico only until December 2023. Ghyslaine filed a combined motion under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2024)) to dismiss the amended petition pursuant to sections 2-615 and 2-619(a)(9) of the Code (*id.* §§ 2-615, 2-619(a)(9)). The part of the motion seeking dismissal under section 2-615 asserted that the amended petition failed to state a cause of action because Francisco "fail[ed] to plead sufficient facts to

establish that Illinois is the 'home state' for the children under the plain definition of [section 102 of the Act]." The part of the motion seeking dismissal under section 2-619(a)(9) affirmatively asserted that, because Ghyslaine had moved to Mexico with the children, Illinois was not their home state. As exhibits to the motion, Ghyslaine attached copies of the following: (1) her Mexican passport and Mexican voter registration card; (2) an apostille for the children's birth certificates issued by the Illinois Secretary of State on February 2, 2023; (3) one-way airline tickets for Ghyslaine and the children to travel from Chicago to Durango, Mexico, on August 20, 2023; and (4) a notarized letter dated August 16, 2023, from Francisco authorizing Ghyslaine to travel to and from Mexico with the children and "to make all decisions including medical and financial." Ghyslaine also submitted documentation establishing that she leased a house in Mexico; enrolled the children in school for the 2023-2024 school year; and was employed by a Mexican firm in an "administrative services" position beginning on September 1, 2023. Exhibits to the motion established that Ghyslaine kept Francisco updated about the children's activities, Francisco provided financial assistance to Ghyslaine and the children, and Francisco sent the children certain personal belongings. According to the memorandum in support of the motion, Ghyslaine and the children traveled to Illinois on March 17, 2024, to visit Francisco during the children's spring break from school. While in Illinois, Ghyslaine informed Francisco that she was "filing for divorce in Mexico." On April 4, 2024, Ghyslaine returned to Mexico with E.A.M.R. Francisco prevented Ghyslaine from taking A.L.R. back to Mexico.

¶ 6 In response to the part of Ghyslaine's motion seeking dismissal under section 2-619, Francisco submitted an affidavit in which he averred that, early in 2023, Ghyslaine continuously asked him if she could take their daughters to Mexico "for a few months on vacation so that they could experience the Mexican culture." Francisco refused because "four (4) months was too long

for [him] not to see [his] daughters." According to the affidavit, in August 2023, Francisco finally agreed to allow Ghyslaine to take their daughters to Mexico, but it was his understanding that the trip would last only a few months. Francisco further stated that Ghyslaine was still employed when she left for Mexico; she and Francisco had not discussed separating; and Francisco continued to receive mail addressed to Ghyslaine. Francisco also submitted affidavits from his sister and his brother-in-law. Francisco's sister averred that around July 2023, Ghyslaine told her that she was going to Mexico with E.A.M.R. and A.L.R. "so that they could experience the culture and learn Spanish for only about six months." Francisco's brother-in-law similarly averred that he spoke with Ghyslaine in July 2023, and she told him that she "was going visit [*sic*] Mexico for a few months so [E.A.M.R. and A.L.R.] could learn Spanish and would be back by Christmas."

¶ 7    Francisco filed a motion for an evidentiary hearing on the motion to dismiss. The trial court denied that motion, concluding that the motion to dismiss could be decided based on the material attached to that motion and Francisco's response. The trial court subsequently entered a written order granting the motion to dismiss. The court rejected Ghyslaine's argument that, because the amended petition failed to allege sufficient facts to establish that Illinois was the children's home state, it failed to state a cause of action. However, the court concluded that the amended petition was subject to dismissal under section 2-619(a)(9). The court reasoned that the parties had differed over whether Ghyslaine was taking the children to Mexico temporarily or permanently. According to the court:

> "[Francisco's] intent was that the children were to be gone until December 2023/January 2024, and the trip to Mexico was a cultural trip. [Ghyslaine's] intent was that her [*sic*] and the children were moving to Mexico ***. [Ghyslaine] asserts that [Francisco] knew of this move and intended of [*sic*] this move because [Francisco] gave

- 4 -

his authority in writing for [Ghyslaine] to travel internationally with the children and empowered her with full medical and financial decision making as it pertains to the children. The parties are clearly split on their intent behind the move to Mexico in August 2023. Therefore, when considering facts related to the parties' intent, no facts weigh heavily in favor of [Francisco's] intent or [Ghyslaine's] intent."

¶ 8 The trial court next considered the "objective circumstances," namely that Francisco consented to Ghyslaine travelling to Mexico with the children; they travelled on one-way tickets; the children's birth certificates were apostilled for use in Mexico; Ghyslaine leased a home, obtained employment, enrolled the children in school, and kept Francisco updated about their activities; and Francisco provided financial assistance and sent certain personal belongings to the children. The court concluded that "[o]bjectively, all facts point towards the children residing in Mexico with Ghyslaine from August 2023 onward." The court also observed that, although the parties had frequent contact after the children were supposed to return from Mexico in December 2023 or January 2024, Francisco did not object to the children remaining in Mexico. Finally, the court noted that, "[i]n what objectively seems retaliatory, [Francisco] filed his initial Petition for Dissolution on April 3, 2024, just one day before [Ghyslaine] was set to return to Mexico with the children and knowingly misstated that [Ghyslaine] and the children resided in Illinois." Reasoning that the children's absence from Illinois during the six-month period before Francisco filed the petition for dissolution was not temporary, the court concluded that Illinois was not the children's home state at any relevant time. Francisco filed a timely notice of appeal.

¶ 9                                    II. ANALYSIS

¶ 10 We initially note that, although Ghyslaine has not filed an appellee's brief, this case is amenable to review on the merits under the guidelines of *First Capitol Mortgage Corp. v. Talandis*

*Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Turning to the merits, section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2024)) permits a party to file a combined motion seeking dismissal under both section 2-615 (*id.* § 2-615) and section 2-619 (*id.* § 2-619) of the Code. "A motion to dismiss under section 2-615 challenges the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2-619 admits the legal sufficiency of the claim but asserts defenses or defects outside the pleading to defeat the claim." *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 23.

¶ 11  Section 2-619 provides that a defendant may move for dismissal of an action based on various enumerated defenses or on the basis that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 6/2-619(a)(9) (West 2024)). If the grounds for dismissal are not apparent from the face of the pleading raising the challenged claim, "the motion shall be supported by affidavit." *Id.* § 2-619(a).

¶ 12  Our supreme court has offered the following description of the function of section 2-619 motions and the process for deciding them:

"Section 2-619 of the Code [citation] provides a means for a defendant to obtain a summary dismissal of issues of law or easily proved issues of fact. [Citation.] A motion to dismiss filed under subsection 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2016)) *** raises an affirmative defense or other matter that avoids the legal effect of or defeats the plaintiff's claims. [Citation.] ***

The defendant bears the initial burden of establishing the existence of an affirmative matter by providing adequate affidavits or other supporting evidence. [Citation.] Once the defendant satisfies its burden, the burden shifts to the plaintiff to establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is

proven. [Citation.] Evidentiary facts asserted in a defense affidavit are deemed admitted unless the plaintiff submits a counteraffidavit to refute those facts. [Citation.] All pleadings and supporting documents must be interpreted in the light most favorable to the nonmoving party. [Citation.] 'If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed.' [Citation.]" *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶¶ 21-22.

¶ 13 It is well established, however, that " '[i]f the affidavits present disputed facts, the parties must be afforded the opportunity to have an evidentiary hearing.' " *In re D.S.*, 2021 IL App (1st) 192257, ¶ 25 (quoting *A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.*, 243 Ill. App. 3d 905, 913 (1993)). See also *Donelson v. Hinton*, 2018 IL App (3d) 170426, ¶ 10 (internal quotation marks omitted) ("In deciding the merits of a section 2-619 motion, the trial court may not determine disputed factual issues without an evidentiary hearing."); *Dinerstein v. Evanston Athletic Clubs, Inc.*, 2016 IL App (1st) 153388, ¶ 33 (When affidavits reveal the existence of "a genuine dispute over a material fact *** that factual dispute must be resolved in an evidentiary hearing, either at that time or reserved for trial, before the law can be applied to those facts.").

¶ 14 On appeal from an order granting a section 2-619 motion to dismiss, we consider "whether a genuine issue of material fact exists and whether the defendant is entitled to a judgment as a matter of law." *Donelson*, 2018 IL App (3d) 170426, ¶ 10. Our review is *de novo*. *Id.* In the analogous setting of summary judgment practice, "a genuine issue of material fact exists when there is conflict regarding the facts or reasonable minds may differ when drawing inferences from undisputed facts." *Board of Education of Winfield School District 34 v. Village of Winfield*, 2026 IL App (3d) 250182, ¶ 23. The question is not simply whether the facts presented by the parties

in the motion to dismiss and the response to the motion are undisputed, but whether reasonable persons could draw different conclusions from those undisputed facts as to the existence or nonexistence of a material fact. *Cf. Prowell v. Loretto Hospital*, 339 Ill. App. 3d 817, 822 (2003) ("A triable issue precluding summary judgment exists where the material facts are disputed or where reasonable persons might draw different conclusions from undisputed facts.").

¶ 15    The part of Ghyslaine's motion seeking dismissal under section 2-619 asserted, as an affirmative matter defeating Francisco's claim, that Illinois was not the children's "home state" for purposes of section 201 of the Act (750 ILCS 36/201 (West 2024)), which confers Illinois courts with "jurisdiction" [1] to make an initial child-custody determination if, *inter alia*, Illinois

> "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State[.]" *Id.* § 201(a)(1).

---

[1] It is important to note that, as used in section 201, "jurisdiction" is a misnomer. It is well established that "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). The General Assembly cannot otherwise expand or limit the circuit court's subject matter jurisdiction, which extends to all justiciable matters. *Id.* (citing Ill. Const. 1970, art. VI, § 9). Custody of the parties' children is clearly a justiciable matter. However, a party to a custody proceeding may assert, as a *non-jurisdictional* statutory defense, that Illinois was not the child(ren)'s home state "on the date of the commencement of the proceeding, or *** within six months before the commencement of the proceeding ***." 750 ILCS 36/201(a)(1) (West 2024).

For purposes of this provision, foreign countries are treated as states. *Id.* § 105(a). A "child-custody determination" is "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order." *Id.* § 102(3).

¶ 16 A child's "home state" is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." 750 ILCS 36/102(7) (West 2024). Periods of temporary absence are included in the six-month period. *Id.* As explained in *In re Frost*, 289 Ill. App. 3d 95, 99 (1997):

> "[A]n Illinois court has jurisdiction over a child custody proceeding if at the time of commencement of the proceeding the child has resided in Illinois with a parent or person acting as a parent for six consecutive months. If at the time of commencement of the proceeding the child is not present in Illinois, home state status exists in Illinois if the child had resided with a parent or a person acting as a parent in Illinois for at least six consecutive months within six months before the proceeding was initiated."[2]

¶ 17 Here, whether Illinois was the children's home state depends on whether their absence from Illinois was temporary or permanent. The totality of the circumstances determines whether absence from Illinois was temporary or permanent. *Camberos v. Palacios*, 2021 IL App (2d) 210078, ¶ 22. One commentator has noted:

> "Factors courts consider [in assessing the totality of the circumstances] include intent and duration, as well as the nature and purpose of the child's presence outside of the state. In

___

[2]Although the definition of "home state" has been amended since *Frost* was decided, the amendment was not intended to change the meaning of that term. *In re Marriage of Milne*, 2018 IL App (2d) 180091, ¶ 30.

employing this test, courts will examine facts relating to establishment of legal residence in a state, such as obtaining a new driver's license, applying for welfare benefits, paying state taxes, owning a house, or signing a lease. They may consider school registration, and whether the child was in the state for medical care, or if the child is present for the parent's schooling or job opportunities." Andrea Charlow, *There's No Place Like Home: Temporary Absences in the UCCJEA Home State*, 28 J. Am. Acad. Matrim. Law 25, 34-35(II)(B)(3) (2015).

¶ 18    In this case, whether the children's absence from Illinois was temporary or permanent is a genuine issue of material fact precluding dismissal under section 2-619.[3]  Significantly, the trial court did not employ the burden-shifting analysis outlined in *Rehfield*. The court simply proceeded directly to the substantive issue, without taking further evidence, reasoning that the totality of the

[3]As noted, although the trial court dismissed the amended petition under section 2-619(a)(9), it ruled that the amended petition was not subject to dismissal under section 2-615 of the Code for failure to state a cause of action. In doing so, the trial court rejected Ghyslaine's argument that Francisco failed to plead sufficient facts to establish that Illinois was the children's home state. It is not clear whether the trial court concluded that Francisco adequately alleged that Illinois was the children's home state or simply concluded that the identity of the children's home state was not an essential element of Francisco's cause of action. In the former case—*i.e.* if the trial court believed that the "home state" element was essential and sufficiently pleaded—then the court's rationale for dismissal under section 2-619(a)(9) collapsed. A motion to dismiss under section 2-619(a)(9) raises an "affirmative matter" that defeats the plaintiff's (or the petitioner's) claim. 735 ILCS 5/2-619(a)(9) (West 2024). The phrase "affirmative matter" does not encompass negation of an essential allegation of the cause of action. *Barry v. City of Chicago*, 2021 IL App (1st) 200829, ¶ 19.

circumstances showed that the children's absence from Illinois while in Mexico was not temporary and, therefore, Illinois was not the children's home state when Francisco filed his original petition for dissolution of marriage.

¶ 19    More crucially, the court's decision was based on a misapprehension of the record. With respect to whether parties intended for the children to remain in Mexico permanently, the trial court concluded that the parties were "clearly split," *i.e.*, that there was no mutual intent. The court overlooked the affidavits of Francisco's sister and brother-in-law. Franscisco's sister averred that Ghyslaine told her she was taking the children to Mexico "for only about six months." Franscisco's brother-in-law averred that Ghyslaine told him she was "going to visit Mexico for a few months so that the girls could learn Spanish and she would be back by Christmas." These statements are evidence that Ghyslaine intended the children's absence from Illinois to be temporary, which is consistent with Francisco's understanding, as described in his own affidavit.

¶ 20    Proceeding from the misconception that there was no evidence of mutual intent, the trial court reached its decision based primarily on objective factors including the following: that the children's birth certificates were apostilled; that Francisco consented in writing to Ghyslaine traveling to and from Mexico with the children and authorized her to make decisions about the children and; that, while in Mexico, Ghyslaine found employment, rented a home, and enrolled the children in school. Leaving aside Ghyslaine's statements to Francisco's sister and brother-in-law, these factors are still arguably consistent with a temporary (albeit extended) visit to Mexico. When those statements are taken into account, however, (which the trial court evidently failed to do), it is clear that a genuine issue exists as to the permanence of the children's absence from Illinois. Accordingly, the trial court erred in dismissing the amended petition without holding an evidentiary hearing.

¶ 21                             III. CONCLUSION

¶ 22    For the reasons stated, we reverse the judgment of the circuit court of Kane County and

remand for further proceedings.

¶ 23    Reversed and remanded.